Daniel Olmos (SBN 235319)
NOLAN BARTON & OLMOS LLP
600 University Avenue
Palo Alto, California 94310
650/326-2980 – Telephone
650/326-9704 – Facsimile

Counsel for Defendant
MICHAEL CLEMANS

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CR 2:15-cr-0227-JAM |
| Plaintiff, | ) ) ) | DEFENDANT'S TRIAL BRIEF |
| vs. | ) ) | |
| MICHAEL CAREY CLEMANS, | ) ) | Date:   August 28, 2017 |
| Defendant. | ) ) | Time:  9:00 a.m. |
| | ) | Court:  Hon. John A. Mendez |
| _____ | ) | |

Defendant Michael Clemans hereby submits this trial brief to assist the Court with respect to the August 28, 2017, jury trial.

## I.       Procedural Issues

Defendant Clemans is charged by Superseding Indictment with six charges: Count One alleges a violation of 18 U.S.C. § 2423(b) and (e) (travel and attempted travel with intent to engage in illicit sexual conduct), which alleges conduct taking place in November 2013; Count Two alleges a violation of 18 U.S.C. § 2423(b) and (e) (conspiracy to travel with intent to engage in illicit sexual conduct), which alleges conduct taking place between June 2014 and July 2015; Count Three alleges a violation of 18 U.S.C. § 2251(c) and (e) (conspiracy to produce child pornography), which alleges conduct taking place between June 2014 and July 2015;  Count Four alleges a violation of 18 U.S.C. § 2251A(b)(1) (buying of children), which alleges conduct taking place between June 2014 and July 2015; Count Five alleges a violation of 18 U.S.C. §

2251(c) and (e) (attempted production and production of child pornography), which alleges conduct taking place between June 2014 and July 2015; and Count Six alleges a violation of 18 U.S.C. § 2252(a)(2) (receipt of child pornography), which alleges conduct taking place in May 2015.

Prior to trial, Defendant Clemans intends to plead guilty, without the benefit of a plea agreement, to Counts Three, Five, and Six of the Superseding Indictment, the three charges specifically related to receipt and production of child pornography.  Therefore, the jury trial in this matter will proceed only with respect to Counts One, Two, and Four.

## II.   Factual Background

Defendant Michael Clemans was, at all times relevant to this case, a resident of Bangkok, Thailand.  Although Mr. Clemans is a United States citizen, he had been a full-time resident of several Asian countries for more than a decade preceding the events giving rise to this case. When the events alleged in this case began, Mr. Clemans was a commercial pilot for New Gen Airways, a regional airline which focuses on trips between Thailand, where it is based, and various cities in China and Southeast Asia.  Prior to the events alleged in the Superseding Indictment, Mr. Clemans had been a resident of Bangkok, and a pilot for New Gen, for more than two years.

There are two time periods relevant to the three charges the jury will consider in this case.  The first, which relates to Count One, is November 2013, when the government alleges that Mr. Clemans flew directly from Bangkok to Manila, Philippines and engaged in illicit sexual conduct with a minor.  The government alleges that, prior to his trip to the Philippines, Defendant Clemans communicated via Yahoo! instant Messages (IM) with an individual purportedly named "Nelia Cruz," who communicated that she could secure a minor with whom Mr. Clemans could engage in sexual contact while he was in Manila.  The government will introduce evidence that, after Mr. Clemans' arrival in Manila, he sent numerous IMs to "Nelia Cruz" demonstrating that he was at a pre-arranged meeting spot, but "Nelia Cruz" was not there. There is evidence that Mr. Clemans then sent IMs to an individual purportedly named "Juvy

Malicdem" for the same purpose – to arrange for sexual contact with a minor in Manila.  There are also IMs from Mr. Clemans to "Juvy Malicdem" which post-date Mr. Clemans' three-day trip to the Philippines which appear to indicate Mr. Clemans' gratitude to "Juvy Malicdem" for arranging a victim for Mr. Clemans.  However, there is no evidence regarding this victim's actual age, nor is there evidence other than Mr. Clemans' IMs whether he actually met a victim in the Philippines or, if he did, what he did with her.  Further, there is no evidence that Mr. Clemans' 2013 travel from Bangkok to Manila had any territorial nexus to the United States. The defense does not anticipate that the government will call any alleged victim to testify at trial, nor will it call "Nelia Cruz" or "Juvy Malicdem."

The second time period relevant to this case, which relates to Counts Two and Four, is June 2014 to July 2015.  During that time period, the government will introduce evidence that Mr. Clemans, through communications with an individual named Lyan Tandeg residing in Port Angeles, Philippines, requested and received images containing child pornography.  The government will introduce evidence that Ms. Tandeg, at the request of Mr. Clemans and as a result of Western Union payments by Mr. Clemans, recruited minor children, took pornographic pictures of them, and then sent the pictures via Dropbox and other means to Mr. Clemans.  The government will introduce live testimony of at least two of these minor victims at trial.  The government will also introduce evidence, again through Yahoo! IMs, that Mr. Clemans stated that he intended at some unidentified time in the future to travel to Port Angeles for the purpose of having illicit sexual contact with these minor victims, and that he sent some of these IMs while visiting his mother's house in Sacramento, CA.  There is no evidence that Mr. Clemans ever traveled to Port Angeles, made concrete plans to do so, made a specific agreement with Tandeg or anybody else to travel to Port Angeles, met any alleged victim from the city (let alone had illicit sexual contact with them), or that he conspired in any manner to obtain permanent custody of the Port Angeles victims for any purpose.

### III.      Legal Issues that May Arise at Trial

The defense anticipates that significant legal issues will arise at trial with respect to the three charges for which the jury will hear evidence.

A.   Count One

The defense submits that two legal issues specific to Count One will arise at the close of the government's case.  Count One alleges a violation of 18 U.S.C. § 2423(b) and (e) (travel and attempted travel with intent to engage in illicit sexual conduct), which alleges conduct taking place in November 2013.  Section 2423(b) proscribes the following conduct:

> A person who travels in intersate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

First, the defense is aware of no evidence which would establish a nexus between Mr. Clemans' November 2013 travel between Bangkok and Manila, and the United States.  *See, e.g., United States v. Weingarten*, 632 F.3d 60 (2d Cir. 2011) (holding that § 2423(b) does not apply to travel exclusively between two foreign countries that have no territorial relationship to the United States).  Mr. Clemans' flight between Thailand and the Philippines was direct, and was not a continuation of a flight from the United States.  When Mr. Clemans traveled to the Philippines in November 2013, he had been a full-time resident of Thailand for several years, and had not lived in the United States for at least a decade.

Second, the defense believes that the government will be unable to introduce sufficient evidence to prove that a violation of a violation of 18 U.S.C. § 2423(b) and (e) actually occurred, because beyond Mr. Clemans' IM statements to "Nelia Cruz" and "Juvy Malicdem," there is no evidence that any crime took place in Manila in November 2013 or at any other time.  There will be no evidence regarding the age or identity of any victim, or whether any illicit sexual conduct actually took place.  The defense put forth a more detailed argument on this issue in its Motion In Limine re: Corpus Delicti.  *See* Docket No. 44.

B.  Count Two

Count Two alleges a violation of 18 U.S.C. § 2423(b) and (e) (conspiracy to travel with intent to engage in illicit sexual conduct), which alleges conduct taking place between June 2014 and July 2015.  The government will attempt to prove this conspiracy through evidence that Mr. Clemans, via Yahoo! IM messaging and Western Union payments, directed Lyan Tandeg to recruit minor children, take pornographic pictures of them, and then send the pictures via email or Dropbox to Mr. Clemans.  Mr. Clemans did state numerous times in IMs to Tandeg that he intended to travel to Port Angeles, Philippines to have illicit sexual contact with the child victims in the photographs allegedly produced by Tandeg, although he never made actual plans to do so, nor did Tandeg communicate or agree with him regarding any specific plan to travel to the Philippines.

Here, the object of the conspiracy is a violation of 18 U.S.C. § 2423(b):

A person who *travels* in intersate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b) (emphasis added).   The government has evidence, through the IMs and Western Union payments, that Mr. Clemans and Tandeg conspired to produce child pornography.  However, here there is no evidence that there was ever a criminal agreement between Mr. Clemans and Tandeg or any other co-conspirator that he *actually travel* to Port Angeles, which is the object of the charged conspiracy.  Generally, conspiracies require an "overt act" in furtherance of the conspiracy.  The government lists 15 "overt acts" in the Superseding Indictment, but none goes to the gravamen of the charge: travel.  Neither Mr. Clemans nor any of his alleged co-conspirators made any overt act in furtherance of any purported travel to Port Angeles – there is no evidence that anybody set an itinerary, bought a ticket, or planned a particular time to travel.  A mere statement of intent is insufficient to constitute an overt act for purposes of a criminal conspiracy.  See, e.g., Cramer v. United States,

325 U.S. 1, 18 fn 21 (1945) (citing the concept that "[w]ords do not constitute an overt act; they remain only an idea.").

Moreover, even for criminal statutes without an expressed "overt act" requirement for a conspiracy charge, "simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *See, e.g., U.S. v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980). Because there was never a specific agreement to accomplish the specific illegal objective – here, the travel to the Philippines – the government will not be able to prove the violation charged in Count Two.

C. Count Four

Count Four alleges a violation of 18 U.S.C. § 2251A(b)(1) (buying of children), which, like Count Two, alleges conduct taking place between June 2014 and July 2015. Section 2251A(b)(1) punishes the following conduct:

> (b) Whoever purchases or otherwise obtains custody or control of a minor, or offers to purchase or otherwise obtain custody or control of a minor either
> (1) with knowledge that, as a consequence of the purchase or obtaining of custody, the minor will be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct.

The defense will argue that there is no evidence that Mr. Clemans conspired to "purchase[] or otherwise obtain[] custody or control of a minor" under the meaning of that term in the statute.[1]

The gravamen of the factual allegations related to Count Four is that Lyan Tandeg, at Mr. Clemans' direction, recruited young girls in Port Angeles, Philippines, paid money to their parents, took pictures of the young girls in hotel rooms before returning the girls to their guardians, and then sent the pictures to Mr. Clemans. Mr. Clemans also made statements in Yahoo! IMs to Tandeg that he intended to travel to Port Angeles at some unidentified time in the future to have sex with the girls, although he never made actual arrangements to do so.

---

[1] This issue was addressed in detail in a prior Motion to Dismiss filed by the defense, *see* Docket No. 25, and will be addressed in the defense's proposed jury instructions.

There are two primary offenses dealing with the use of minors in producing child pornography.  The baseline offense is 18 U.S.C. 2251(a), which prohibits the employment, use, persuasion, inducement, enticement, or coercion of a minor for the purposes of producing child pornography.  In contrast, § 2251A covers more serious conduct, and carries substantially heavier penalties than 2251(a) (15-year minimum for § 2251(a) versus 30-year minimum for §2251A).  Section 2251A(a) prohibits a parent, legal guardian, or other person having "custody or control" of a minor from selling or transferring custody or control of the minor for the purpose of producing child pornography.  Section 2251A(b), which is charged in Count Four, prohibits any person from buying or obtaining "custody or control" of a minor for the purpose of producing child pornography.

There is scant case law interpreting § 2251A.  *United States v. Buculei*, 262 F.3d 322, 334 (4th Cir. 2001), addressed the statute in a case involving a 38-year-old man who obtained "control" over a 14-year-old girl he met on the Internet when he took her to a hotel for a night and gave her an intoxicating drink.  *Buculei, supra,* at 333.  In *Buculei*, the Fourth Circuit adopted the district court's definition of "control" as "the power to manage, command, direct or restrain another person" – the court focused on the intoxicating drink as being sufficient to establish that the defendant had taken control of the minor for purposes of satisfying that essential element of the crime.  *Id.*  The dissent in *Buculei* proposed an alternative definition of "control."  Drawing from Webster's Dictionary, the dissenting judge wrote that, "to have 'custody or control,' the defendant must exert a significant degree of authority over the minor." *Id.* at 334.  He interpreted § 2251A in the context of § 2251(a), explaining that in order to avoid making § 2251A redundant, the statute must be interpreted to involve "something more than employment, use, persuasion, inducement, enticement or coercion."  *Id.*, *citing Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (courts should avoid interpreting one statute in a way that makes another statute redundant).

There is currently no published Ninth Circuit case interpreting the "custody or control" element of 18 U.S.C. § 2251A.  In an unpublished 2011 case arising out of the Eastern District of

7

California, *United States v. LaBrecque*, 433 Fed. Appx. 551 (9th Cir. 2011), the Ninth Circuit held that 18 U.S.C. §2251A did not apply to a situation where parents in California sent their child to a relative's house in Texas to be home schooled, knowing that the production of child pornography would occur, because the adult in Texas never had complete control over the child. *Id.* at 552.  The *LaBrecque* Court held that, as long as the child's mother "has supervision over or responsibility for" the child, 18 U.S.C. § 2251A did not apply, because the other adult did not have custody for purposes of the statute.  *Id.*  This appears to impose a significantly higher standard for finding "custody or control" than contemplated in *Buculei*, because it holds that if a parent "continue[s] to exercise control over [the child] in many respects," another adult cannot have "custody or control" under § 2251A.  *Id.*

Here, the defense will urge the Court to adopt the definition of "custody and control" which was utilized by the Court in *LaBrecque*, and reject the definition used by the Fourth Circuit in *Buculei*.  The government will produce no evidence that Mr. Clemans or anybody else conspired to take "supervision over or responsibility for" any victim from her parent or guardian.  At most, the government will prove that Tandeg used "enticement or coercion" in the form of monetary payments to the victims' parents to take pictures of the victims, where after she returned the victims to the custody and control of their parents or guardians.

## IV.    Witness List

At this time, the defense is aware of the following potential witnesses it expects to call during its case in chief: Dr. C. Mark Patterson.

## V.    Stipulations

The parties have recently stipulated to a protective order governing certain evidence to be produced to the defense and entered into evidence at trial.  The parties have discussed stipulating as to the authenticity of certain documents, the chain of custody regarding certain documents, and the physical location of various IP addresses.  The defense has agreed to enter these stipulations to promote efficiency and eliminate chain of custody witnesses, and is awaiting draft

stipulations from the government for review.  There are additional stipulations about which the government and defense are in ongoing discussions.

## VI.    Exhibits

At this time, the defense has not yet identified any exhibits to be presented in its case in chief.  The defense is still reviewing numerous documents which have been produced in the past two weeks to determine which if any documents will be introduced in its case in chief, and which will be used during cross-examination of government witnesses.

## VII.    Interpreters

The defendant does not require the use of interpreters, and the defense does not anticipate that any witness that it intends to call in its case in chief will require the use of an interpreter.


## VIII.    Other Issues

The defense intends to propose jury instructions, particularly on the elements of the three counts on which the jury will hear evidence.  In addition, there are a number of contested motions in limine pending before the Court.


Date:   August 21, 2017                    Respectfully submitted,


                                           __/s/ Daniel Olmos_____
                                           Daniel Olmos
                                           Counsel Defendant Michael Clemans