PHILLIP A. TALBERT
United States Attorney
ANDRÉ M. ESPINOSA
COLLEEN M. KENNEDY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Plaintiff,

          v.

MICHAEL CAREY CLEMANS,

                Defendant.

CASE NO.  2:15-CR-00227-JAM

TRIAL BRIEF OF THE UNITED STATES

# TABLE OF CONTENTS

**I.      STATUS OF THE CASE** .................................................................................................1

**II.     RELEVANT FACTUAL BACKGROUND**.................................................................1

    A.      Background ............................................................................................................1

    B.      The 2014-2015 Criminal Conduct: Counts Two Through Six .................................2

    C.      The 2013 Criminal Conduct: Count One .................................................................5

**III.    THE GOVERNMENT'S CASE-IN-CHIEF**.................................................................**5**

    A.      Witnesses ................................................................................................................5

    B.      Documents and Business Records ...........................................................................6

**IV.     ELEMENTS OF THE OFFENSES** ...........................................................................**7**

    A.      Definitions..............................................................................................................9

    B.      Foreign Commerce................................................................................................11

    C.      Mens Rea - Knowledge.........................................................................................14

    D.      Criminal Forfeiture 18 U.S.C. § 2253 ..................................................................15

**III.    EVIDENTIARY ISSUES** ...........................................................................................**15**

    A.      Electronic Data in General....................................................................................15

    B.      Images of Child Pornography ...............................................................................16

    C.      Business Records ..................................................................................................16

    D.      Summary Chart Exhibits .......................................................................................17

    E.      Chain of Custody ..................................................................................................18

    F.      Testimony Regarding a Person's Age....................................................................18

    G.      "Missing Witness" Argument ...............................................................................19

    H.      Presentation of Witnesses.....................................................................................19

    I.      Issues Related to Closing Arguments ....................................................................19

    J.      Counseling for Jurors ...........................................................................................19

    K.      Forfeiture Allegation.............................................................................................20

**IV.     POSSIBLE DEFENSES** ..............................................................................................**20**

V.   EXCLUSION OF ANY EVIDENCE OFFERED BY THE DEFENDANT ...........................21

VI.   CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burgess v. United States,*
    *440 F.2d 226 (D.C. Cir. 1970)* ............................................................................................. 19

*Libretti v. United States,*
    *516 U.S. 29 (1995)* ................................................................................................................. 20

*United States v. Bramble,*
    *680 F.2d 590 (9th Cir. 1982)* ............................................................................................... 19

*United States v. Briscoe,*
    *896 F.2d 1476  (7th Cir. 1990)* ............................................................................................ 16

*United States v. Brown*,
    *785 F.3d 1337 (9th Cir. 2015)* ............................................................................................. 12

*United States v. Cabrera,*
    *201 F.3d 1243 (9th Cir. 2000)* ............................................................................................. 19

*United States v. Candoli,*
    *870 F.2d 496 (9th Cir. 1989)* ............................................................................................... 18

*United States v. Clark,*
    *435 F.3d 1100 (9th Cir. 2006)* ............................................................................................. 13

*United States v. Duncan,*
    *919 F.2d 981 (5th Cir. 1990)* ............................................................................................... 18

*United States v. Flocker,*
    *504 F. App'x 637 (9th Cir. 2013)* ........................................................................................ 12

*United States v. Flyer*,
    *633 F.3d 911 (9th Cir. 2011)* ............................................................................................... 11

*United States v. Garcia-Guizar,*
    *160 F.3d 511 (9th Cir. 1998)* ............................................................................................... 20

*United States v. Hernandez,*
    *145 F.3d 1433 (11th Cir. 1998)* ........................................................................................... 19

*United States v. Hill,*
    *459 F.3d 966 (9th Cir. 2006)* ................................................................................................. 9

*United States v. Johnson*,
    *639 F.3d 433 (8th Cir. 2011)* ................................................................................................. 9

*United States v. Koch,*
    *625 F.3d 470 (8th Cir. 2010)* ............................................................................................... 11

*United States v. Kramer*,
    *631 F.3d 900 (8th Cir. 2011)* ............................................................... 10

*United States v. Lacy*,
    119 F.3d 742 (9th Cir. 1997) ............................................................... 10

*United States v. Lemire*,
    *720 F.2d 1327 (D.C. Cir. 1983)* ............................................................... 18

*United States v. Lynn*,
    636 F.3d 1127 (9th Cir. 2011) ............................................................... 11, 12

*United States v. Mathis*,
    *767 F.3d 1264 (11th Cir. 2014)* ............................................................... 10

*United States v. Meyers*,
    *847 F.2d 1408 (9th Cir. 1988)* ............................................................... 18

*United States v. Mohrbacher*,
    *182 F.3d 1041 (9th Cir. 1999)* ............................................................... 15

*United States v. Overton*,
    573 F.3d 679 (9th Cir. 2009) ............................................................... 9

*United States v. Salgado*,
    *250 F.3d 438 (6th Cir. 2001)* ............................................................... 16

*United States v. Shirley*,
    *884 F.2d 1130 (9th Cir. 1989)* ............................................................... 17

*United States v. Skeet*,
    *665 F.2d 983 (9th Cir. 1982)* ............................................................... 18

*United States v. Tucker*,
    *305 F.3d 1193 (10th Cir. 2002)* ............................................................... 15

*United States v. Vela*,
    *673 F.2d 86 (5th Cir. 1982)* ............................................................... 16

*United States v. Weingarten*,
    *623 F.3d 60 (2nd Cir. 2011)* ............................................................... 14

*United States v. Whitaker*,
    *127 F.3d 595 (7th Cir. 1997)* ............................................................... 16

*United States v. Wright*,
    625 F.3d 583 (9th Cir. 2010) ............................................................... 12

*United States v. X-Citement Video, Inc.*,
    *513 U.S. 64 (1994)* ............................................................... 14

*United States v. Yazzie,*
  *976 F.2d 1252 (9th Cir. 1992)* ........................................................................... 18

## STATUTES

18 U.S.C. § 1030(e)(1) ........................................................................................... 4

18 U.S.C. § 2251(a) ...................................................................................... 1, 2, 11

18 U.S.C. § 2251(e) ............................................................................................. 11

18 U.S.C. § 2252 ................................................................................................... 1

18 U.S.C. § 2252(a)(2) ................................................................................... passim

18 U.S.C. § 2252(a)(4) ......................................................................................... 17

18 U.S.C. § 2253 ................................................................................................... 6

18 U.S.C. § 2256(1) ............................................................................................... 3

18 U.S.C. § 2256(2) ............................................................................................... 3

18 U.S.C. § 2256(6) ............................................................................................... 4

California Penal Code § 288a(b)(1) ........................................................................ 6

## RULES

Fed. R. Crim. P. 23(a) .......................................................................................... 17

Fed. R. Crim. P. 32.2(b) ....................................................................................... 17

Fed. R. Crim. P. 32.2(b)(1) ................................................................................... 16

Fed. R. Crim. P. 32.2(b)(4) ................................................................................... 16

Fed. R. Evid. 1006 ............................................................................................... 15

## I.      STATUS OF THE CASE

Trial is scheduled to begin on Monday, August 28, 2017, at 9:00 a.m.  The estimated trial time is approximately six court days.  The government may call approximately sixteen witnesses and, at this time, plans offer approximately 100 exhibits into evidence.  Many of these exhibits will have multiple pages, approximately twenty-five of those exhibits are images of child pornography.  The defendant is in custody.

The six-count Superseding Indictment, filed on June 22, 2017, charges the defendant with attempted travel/travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) and (e) (Count One); conspiracy to travel with intent to engage in illicit sexual conduct, in violation 18 U.S.C. § 2423(b) and (e) (Count Two); conspiracy to produce child pornography, in violation of 18 U.S.C. §§ 2251(c) and (e) (Count Three); buying of children, in violation of 18 U.S.C. § 2251A(b)(1) (Count Four); attempted production/production of child pornography, in violation of 18 U.S.C. §2251(c) (Count Five); and receipt of child pornography, in violation of 18 U.S.C. 2252(a)(2) (Count Six).  The Superseding Indictment also contains a forfeiture allegation for any property used to commit certain of the offenses charged, including four electronic devices.

This trial brief addresses the case's factual background, the charges, the elements of the offenses, certain relevant evidence the government expects to offer in its case-in-chief, certain anticipated evidentiary issues, and other trial management issues.

## II.      RELEVANT FACTUAL BACKGROUND

### A.      Background

In late 2014, investigators discovered evidence of the criminal child-exploitation activities of Defendant and his co-conspirators through referrals from Yahoo! and others business entities. Defendant was then a 54-year-old U.S. citizen temporarily residing in Bangkok, Thailand, and working as a pilot for a Thai airline.  A subsequent international investigation ultimately revealed Defendant's participation in criminal conspiracies, between June 2014 and July 2015, with Philippine nationals including Lyan Tandeg ("Tandeg"), to produce child pornography (Count Three) and to travel from Bangkok to Manila with the intent to engage in illicit sexual conduct with young girls secured by Tandeg (Count Two).  In the execution of those conspiracies, Defendant also engaged in additional

criminal offenses, including buying of children—secured by Tandeg—with knowledge that they would be portrayed in sexually explicit images (Count Four), the production of images of child pornography by Tandeg at Defendant's direction (Count Five), and receipt of images of child pornography delivered by Tandeg (Count Six).

In sum, the charges in Counts Two through Six describe a scheme in which Defendant and Tandeg agreed that Defendant would send money to Tandeg, who, in exchange and at Defendant's request, would locate minor girls in the Philippines, take custody over those girls, take them to a property Defendant and Tandeg rented for that purpose, make sexually explicit photos of them, and send the photos to Defendant over the Internet for Defendant to review and identify girls whom he desired to travel to Manila to rape. Defendant was particularly interested in young virgins and instructed Tandeg to take photographs of the girls she found that would permit Defendant to inspect their vaginas for the presence of a hymen. Tandeg also agreed to preserve the virginity of certain girls Defendant identified as girls whom he particularly desired to travel to Manila to rape. As part of their agreement, Defendant paid Tandeg enough to purchase a digital camera, a computer, and other items.

The investigation also revealed that Defendant engaged in another scheme with separate individuals in November 2013, in which he traveled from Bangkok to Manila for the purpose of engaging in illicit sexual contact with minors, including an eleven-year-old girl, after requesting and receiving pornographic images of minors whom Defendant expected to rape (Count One).

### B.   The 2014-2015 Criminal Conduct: Counts Two Through Six

Defendant used his Yahoo! email and instant messenger account—"spitzinu@yahoo.com"—as a means to communicate with co-conspirators and others, including Tandeg, who used the email and instant messenger account "lyantandeg@rocketmail.com." Among other things, Defendant and Tandeg communicated about the specific age ranges of minor girls in whom Defendant was sexually interested, the precise amounts Defendant would pay Tandeg for her efforts to accomplish their criminal goals, and where and how Tandeg would recruit victims. For example, to minimize parental interference, Defendant instructed Tandeg to locate girls who were orphans, victims of typhoons, or were otherwise vulnerable. From June 2014 through July 2015, Defendant sent more than $4,000 to the Philippines in furtherance of the crimes charged in the Superseding Indictment. He paid for those money transfers

with funds from a bank account he maintained in the United States.  During the same period, Tandeg completed several sexually explicit photoshoots of multiple pre-pubescent girls at Defendant's instruction.

On or about April 27, 2015, Defendant returned to the United States on a flight into San Francisco International Airport, where U.S. Customs and Border Protection officers discovered images of child pornography on his iPad tablet.   Defendant gave written consent to search his devices, and agreed to answer questions from investigators.  In a recorded interview, Defendant stated, among other things, that he downloaded the child pornography images from various Chinese and Russian websites, that he had no fantasies to have sex with eight-year-old girls, that he had never paid money to obtain child pornography, and that he would never download child pornography again.  Defendant also said that when he visited the United States he stayed at his family's residence in Sacramento.  Defendant was arrested at the airport on state charges of possession of child pornography.

Additional investigation revealed that certain of the images on Defendant's iPad were newly-created images of child pornography that Tandeg had recently produced for Defendant as part of their conspiracy and in pursuit of their other criminal goals.  Metadata extracted from those images showed that certain of the images were made on November 9, 2014.  Certain of the images are identical to images sent via instant messenger chats between Tandeg and Defendant.  Chats between both of them on November 9, 2014 discuss a photoshoot in the "James Bond" room at a Philippine hotel.  The backgrounds in certain of the images match the images of a "James Bond" room advertised by the Hotel Sogo in Angeles City in the Philippines.

After his release on bond, while in the United States, Defendant continued to take steps in furtherance of the conspiracies, and continued to instruct Tandeg regarding the additional crimes with which he is now charged.  Multiple times in May 2015, Defendant logged into his Yahoo! account from an IP address that traced back to the home of Defendant's mother, where Defendant was residing during the pendency of his state criminal proceedings.  During chat sessions using Yahoo!'s instant messenger function, Defendant told Tandeg about his arrest and told her that if convicted, he would not live in the United States any longer.  He said that he wanted to have sex with Tandeg and the minor girls featured in the child pornography she was creating.  He also asked Tandeg to send him images of a particular

minor girl Tandeg had recently photographed.  After receiving those files, Defendant told Tandeg that the girl was not a virgin because he could not see her hymen in the photos.  In May 2015, Defendant also sent Tandeg money through the online international money transfer service Western Union.

On July 24, 2015, a federal search warrant was executed at the residence of Defendant's mother. Investigators seized numerous digital devices and arrested Defendant on a federal criminal complaint the same day.  Later, investigators also obtained and executed an additional warrant to search electronic devices that Defendant's father had shipped to the Sacramento residence of Defendant's mother, after visiting Bangkok to collect those items at Defendant's instruction.  A forensic review of those devices, which included several "thumb drives" and at least two laptop computers, revealed thousands of images of child pornography.

After his arrest on federal charges, Defendant gave consent to investigators to assume control of his Yahoo! account to communicate with his co-conspirators.  In undercover efforts, law enforcement agents were able to develop contact with Tandeg.  On November 4, 2015, Nate Sanger ("Sanger"), a former American law enforcement agent who resides in Manila and is employed with a non-governmental organization there, agreed to assist the Philippine National Bureau of Investigation ("NBI") and pretended to be a "friend" of Defendant who wanted to help "clean things up" for Tandeg. Tandeg, along with her friend Shellina Atad ("Atad") and an unidentified Filipino male, showed up to meet Sanger and an undercover NBI agent with whom Sanger was working.

After doing some counter-surveillance, the unidentified Filipino male left the scene and Tandeg and Atad got into a car with Sanger and the NBI agent.  Tandeg told Sanger that for money, he could take pornographic pictures of a girl she identified as "Angel."  However, Tandeg told Sanger he could not have sex with Angel.  Tandeg also produced a thumb drive, which she said she had been keeping for Defendant.  Sanger viewed the contents of the thumb drive on a laptop in the car and determined it contained images of child pornography, some of which matched images that had been previously sent to Defendant in online photo accounts.  Sanger and the NBI agent asked to see one of the victims in person and Tandeg arranged for Angel to come up to the car.  The child's appearance matched that of a child also identified as "Angel" in chats between Defendant and Tandeg and in images seized from Defendant depicting child pornography.  Thereafter, NBI agents arrested Tandeg and Atad, who were eventually

convicted in the Philippines for child exploitation crimes.  Tandeg was interviewed and, in summary, stated she had taken sexually explicit photos at Defendant's direction, and then sent him the photos.  She said that parents had given her temporary custody and control of their children and she had used those children to make child pornography for Defendant.  In exchange, Defendant sent Tandeg money.

Investigators located three of the child victims who posed in sexually explicit photos for Tandeg at Defendant's direction, including Angel.  All three minor victims are expected to testify against Defendant at trial.

### C.    The 2013 Criminal Conduct: Count One

The investigation also revealed that in November 2013 Defendant communicated with another Philippine national named Nelia Cruz ("Cruz") about his desire to travel from Bangkok to Manila to engage in illicit sexual conduct with young girls.  After receiving sexually explicit images of children from Cruz and identifying victims, including an eleven-year-old girl, and after sending Cruz money via Western Union, Defendant in fact travelled to Manila from Bangkok to rape his victims.  Defendant paid for those money transfers and his travel with funds from a bank account he maintained in the United States.  However, Cruz failed to appear at their pre-arranged meeting place.  Defendant repeatedly contacted Cruz and told her he was in Manila and ready to have sex with the young girls she had identified.  Defendant ultimately abandoned his efforts with Cruz and turned to a different contact, Juvy Malicdem ("Malicdem"), who also sent him sexually explicit images of minors whom Defendant could select for sexual conduct.  Defendant sent Malicdem money via Western Union and arranged to have sex with two girls under the age of 16 that she provided for him.

### III.    THE GOVERNMENT'S CASE-IN-CHIEF

### A.    Witnesses

The government will file a witness list in this case.  The government will err on the side of including witnesses and may not call every witness on the list, particularly in view of how the case develops at trial. The government's investigation of the case and preparation for trial continues, and the government reserves the right to add witnesses should it become necessary.

These witnesses are, generally:

- Law enforcement agents who:

- Interacted with and interviewed Defendant at the airport in San Francisco when he re-entered the United States in April 2015;
- Participated in the execution of a search warrant at the Sacramento residence of Defendant's mother, and who will introduce evidence seized during that search;
- Reviewed evidence obtained from Yahoo! through the execution of a search warrant on the contents of Defendant's Yahoo! account, and who will introduce evidence seized during that search;
- Reviewed evidence obtained from Yahoo!, AT&T, Webminds, Inc. d/b/a/ Dropshots, Western Union, and First US Community Credit Union, and who will introduce evidence obtained from those entities, including summaries of the contents of voluminous Western Union records.[1]
- Reviewed digital images found on electronic devices possessed by Defendant and cloud storage websites accessed by Defendant, and who will introduce evidence of images obtained from those devices and websites, including images of child pornography.

- A former American law enforcement agent who resides in Manila and is employed with a non-governmental organization there, who assisted the Philippine NBI in a law enforcement action aimed at Defendant's co-conspirator, Tandeg, and who will offer testimony about his participation and about images from a recording he made during that operation.
- Three minor victims of Defendant's criminal conduct, who will testify about their experiences while in the custody and control of Tandeg.
- A parent of each of those three minor victims of Defendant's criminal conduct, who will testify about their knowledge concerning Tandeg's interactions with their child.

## B. Documents and Business Records

The government will rely on business records in this case, including records from Yahoo!, AT&T, Webminds, Inc. d/b/a/ Dropshots, Western Union, and First US Community Credit Union, among others. The parties expect to reach a stipulation as to the foundational admissibility of certain of these business records. As discussed more below, due to the volume and presentation of Western Union records,

---

[1] The government anticipates these business records will be admitted into evidence pursuant to a stipulation between the parties. In the absence of a stipulation or an order from the Court admitting those documents pursuant to 803(6) and 902(11), the government will offer the testimony of six custodians of those records.

1   the information in those records will be introduced to the jury through the use of summary charts and

2   testimony.

## IV.   ELEMENTS OF THE OFFENSES

In Count One, Defendant is charged with Attempted Travel/Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b) and (e).  To prove this charge the government must prove beyond a reasonable doubt the following elements: (1) Defendant was an American citizen; (2) Defendant traveled in foreign commerce; and (3) such travel was for the purpose of engaging in any illicit sexual conduct with another person.  The government may also prove this Count by proving that Defendant intended to commit the offense and did something that was a substantial step toward committing the crime.

In Count Two, Defendant is charged with Conspiracy to Travel with Intent to Engage in Illicit Sexual Conduct, in violation 18 U.S.C. § 2423(b) and (e).  To prove this charge the government must prove beyond a reasonable doubt the following elements: (1) beginning on or about June 24, 2014 and continuing through on or about July 24, 2015, there was an agreement between two or more persons to travel in foreign commerce for the purpose of engaging in illicit sexual conduct; (2) Defendant became a member of that conspiracy knowing its object and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  The elements of the underlying offense of Travel with Intent to Engage in Illicit Sexual Conduct are: (1) Defendant was an American citizen; (2) Defendant traveled in foreign commerce; and (3) such travel was for the purpose of engaging in any illicit sexual conduct with another person.

In Count Three, Defendant is charged with Conspiracy to Produce Child Pornography, in violation in violation of 18 U.S.C. §§ 2251(c) and (e).  To prove this charge the government must prove beyond a reasonable doubt the following elements: (1) beginning on or about June 24, 2014 and continuing through on or about July 24, 2015, there was an agreement between two or more persons to produce child pornography; (2) Defendant became a member of that conspiracy knowing its object and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  The elements of the underlying offense of

1  Production of Child Pornography are: (1) Defendant used at least one minor to take part in sexually

2  explicit conduct for the purpose of producing a visual depiction of such conduct; and (2) Defendant

3  intended such visual depiction to be transported to the United States, or transported such visual depiction

4  to the United States.

5      In Count Four, Defendant is charged with Buying of Children, in violation in violation of 18

6  U.S.C. § 2251A(b)(1).  To prove this charge the government must prove beyond a reasonable doubt the

7  following elements: (1) beginning on or about June 24, 2014, and continuing through July 24, 2015,

8  Defendant offered to purchase or otherwise obtain custody and control of at least one minor; (2)

9  Defendant did so either with knowledge that, as a consequence of the purchase or obtaining of custody,

10  the minor would be portrayed in a visual depiction engaging in sexually explicit conduct, or with the

11  intent to promote the engaging in of sexually explicit conduct by the minor for the purpose of producing

12  any visual depiction of such conduct; and (3) the offer was communicated or transported using any

13  means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by

14  any means including by computer.

15      In Count Five, Defendant is charged with Production and Attempted Production of Child

16  Pornography, in violation of 18 U.S.C. §2251(c).  To prove this charge the government must prove

17  beyond a reasonable doubt the following elements: (1) Defendant used at least one minor to take part in

18  sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and (2)

19  Defendant intended such visual depiction to be transported to the United States, or transported such

20  visual depiction to the United States.  The government may also prove this Count by proving beyond a

21  reasonable doubt that Defendant intended to commit the offense and did something that was a

22  substantial step toward committing the crime.  Additionally, the government may also prove Count Five

23  by proving that, even if Defendant personally did not commit the act or acts constituting the crime, he

24  aided and abetted in its commission.  The government may do so by proving that: (1) the crime was

25  committed by someone; (2) Defendant aided, counseled, commanded, induced or procured that person

26  with respect to at least one element of the crime; (3) Defendant acted with the intent to facilitate

27  Production of Child Pornography; and (4) Defendant acted before the crime was completed.

28      In Count Six, Defendant is charged with Receipt of Child Pornography, in violation of 18 U.S.C.

2252(a)(2).  To prove this charge the government must prove beyond a reasonable doubt the following elements: (1) between on or about May 8, 2015 and on or about May 24, 2015, Defendant knowingly received a visual depiction in interstate commerce; (2) the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct; (3) such visual depiction was of a minor engaged in sexually explicit conduct; (4) Defendant knew that such visual depiction was of sexually explicit conduct; and (5) the defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

**A.**   <u>**Definitions**</u>

Many of the terms used in 18 U.S.C. § 2252(a)(2) (Count Six) are statutorily defined:

1.   Minor

A minor is any person younger than eighteen years old.  *See* 18 U.S.C. § 2256(1).

2.   Sexually Explicit Conduct

Sexually explicit conduct is actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.  *See* 18 U.S.C. § 2256(2).

3.   Lascivious Exhibition of the Genitals or Pubic Area

In determining whether a depiction includes lascivious exhibition of the genitals or pubic area, the trier of fact may consider:  (a) whether the focal point of the depiction is the child's genitals or pubic area; (b) whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity; (c) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (d) whether the child is fully clothed, partially clothed, or nude; (e) whether the depiction suggests sexual coyness or a willingness to engage in sexual activity; or (f) whether the depiction is intended or designed to elicit a sexual response from the viewer. *See United States v. Overton*, 573 F.3d 679, 686-87 (9th Cir. 2009); *see also United States v. Hill*, 459 F.3d 966, 971-72 (9th Cir. 2006); *United States v. Johnson*, 639 F.3d 433, 439-40 (8th Cir. 2011).

4.   Visual Depiction

Visual depictions include undeveloped film and videotape.  They also include data stored on

1    computer disk or by an electronic means that is capable of conversion into a visual image.  *See United*

2    *States v. Lacy*, 119 F.3d 742, 750 (9th Cir. 1997).

3              5.     Computer

4           A computer is an electronic magnetic, optical, electrochemical, or other high speed data

5    processing device performing logical, arithmetic, or storage functions.  The definition also includes any

6    data storage facility or communications facility directly related to or operating in conjunction with such

7    device.  It does not include an automated typewriter, portable hand held calculator, or other similar

8    device.  *See* 18 U.S.C. § 2256(6); *see also* 18 U.S.C. § 1030(e)(1); *United States v. Mathis*, 767 F.3d

9    1264, 1283 (11th Cir. 2014) ("defendant's use of a cell phone to call and send text messages constitutes

10   the use of a computer, as that term is defined in 18 U.S.C. § 1030(e)(1)"); *United States v. Kramer*, 631

11   F.3d 900, 902-04 (8th Cir. 2011) (same).

12          Certain terms used in 18 U.S.C. § 2423(b) (Counts One and Two) are also statutorily defined,

13   including the following:

14             6.     Illicit Sexual Conduct

15          The term "illicit sexual conduct" means:  (1) a sexual act (as defined in section 2246) with a

16   person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the

17   special maritime and territorial jurisdiction of the United States; (2) any commercial sex act (as defined

18   in section 1591) with a person under 18 years of age; or (3) production of child pornography (as defined

19   in section 2256(8)).  *See* 18 U.S.C. § 2423(f).

20          Chapter 109A includes the following relevant offenses:

21          (1) Aggravated Sexual Abuse – 18 U.S.C. § 2241

22          (c) With Children.—Whoever crosses a State line with intent to engage in a sexual act with a

23   person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of

24   the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held

25   in custody by direction of or pursuant to a contract or agreement with the head of any Federal

26   department or agency, knowingly engages in a sexual act with another person who has not attained the

27   age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections

28   (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16

years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life. If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

(2) Sexual abuse of a minor or ward – 18 U.S.C. § 2243

(a) Of a Minor.—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who: (1)   has attained the age of 12 years but has not attained the age of 16 years; and  (2) is at least four years younger than the person so engaging;  or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

### B.   <u>Foreign Commerce</u>

The crimes charged in the superseding indictment contain a foreign commerce element. Concerning Count Six, charging receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), this element can be satisfied in one of several ways, including showing that the pornographic images traveled in foreign commerce or that materials used to receive or possess the images moved through foreign commerce. *United States v. Lynn*, 636 F.3d 1127, 1136 (9th Cir. 2011); *United States v. Koch*, 625 F.3d 470, 479 (8th Cir. 2010) ("The government presented evidence that Koch's computer and flash drive were manufactured in China; such evidence is sufficient to satisfy the jurisdictional requirement of 18 U.S.C. § 2252").  Movement through foreign commerce can be accomplished by any means, including by computer.  18 U.S.C. § 2252(a)(2).

Before October 2008, the mere use of the Internet, without more, was insufficient to establish that images moved "in" interstate commerce.  *See United States v. Flyer*, 633 F.3d 911, 917-18 (9th Cir. 2011).  Effective in 2008, however, Congress modified the interstate commerce jurisdictional element for child pornography statutes to include receiving or distributing child pornography using a "means or

1    facility of interstate commerce."  *United States v. Wright*, 625 F.3d 583, 598-601 (9th Cir. 2010).[2]  In

2    doing so, Congress intended "the broadest assertion of interstate commerce power that the Congress can

3    make consistent with the Constitution."  *Wright*, 625 F.3d at 600 (9th Cir. 2010) (citing 153 Cong. Rec.

4    H13592 (daily ed. Nov. 13, 2007) (statement of Rep. Goodlatte) ("The proposed legislative fix ... would

5    expand the jurisdiction to prosecute these crimes when the Internet is used.  This is the broadest

6    assertion of interstate commerce power that the Congress can make consistent with the Constitution.")).

7    For images received or distributed after the effective date of October 7, 2008, including the images in

8    this case, the use of the Internet is sufficient to prove the foreign commerce nexus for federal

9    jurisdiction.

10          The United States may also satisfy the foreign commerce element by presenting evidence that

11   some of the child pornography images Defendant received were created outside the state where the

12   offense conduct occurred (i.e., California in this case).  See *Lynn*, 636 F.3d at 1135; *see also United*

13   *States v. Flocker*, 504 F. App'x 637, 640 (9th Cir. 2013) (finding sufficient evidence to support the

14   interstate commerce element in child pornography distribution case where testimony showed that

15   photographs of a minor had been taken in another state than the one where offense conduct occurred and

16   one of defendant's uploaded photos on the Internet involved that same victim and background).

17          Similarly, concerning Count Five, charging production of child pornography in violation of 18

18   U.S.C. § 2251(c) and (e), the government may satisfy the foreign commerce element by proof that

19   images of child pornography produced by Defendant were made outside of the United States and he

20   intended them to be transported to the United States or did transport them to the United States.  In this

21   case, the evidence—including Defendant's statements and conduct—will prove both alternatives.  In

22   Count Three, which charges a conspiracy to produce child pornography, the evidence will prove

23   Defendant took steps in furtherance of that conspiracy from his mother's home in the Eastern District of

24   California, which will satisfy the required jurisdictional and venue nexus.  While not an element of the

25

26          [2] Westlaw has assigned a red flag to *Wright*, claiming that the case has been superseded by statute (as
     allegedly acknowledged in *United States v. Brown*, 785 F.3d 1337, 1350-1351 (9th Cir. 2015)).  That is

27   inaccurate.  A review of *Wright* and *Brown* indicate that a statutory amendment to the applicable statute occurred
     in 2008, and the only reason that amendment did not apply in *Wright* was because the defendant's offense

28   occurred in 2003—well before the amendment took effect.  Notably, Lexis has not assigned a red flag to *Wright*.

1   conspiracy charged in Count Three, as with Count Five, the government may satisfy the foreign

2   commerce component of the underlying offense by proof that images of child pornography produced by

3   Defendant were made outside of the United States and he intended them to be transported to the United

4   States or did transport them to the United States.

5       The foreign commerce requirement in Count Four, charging Buying Children in violation of 18

6   U.S.C. § 2251A(b)(1), requires proof that Defendant's offer to purchase or otherwise obtain custody and

7   control of a minor "was communicated or transported using any means or facility of interstate or foreign

8   commerce or in or affecting interstate or foreign commerce by any means including by computer." *See*

9   § 2251A(c)(2).  The evidence at trial will establish that Defendant repeatedly used his Yahoo! account to

10  deliver offers criminalized under § 2251A(b)(1), from a computer in Bangkok to a computer in Manila

11  used by Tandeg.  Such evidence is sufficient to satisfy the foreign commerce element in § 2251A(c)(2).

12  Moreover, the evidence will also establish that Defendant funded those criminal offers and other acts in

13  furtherance of his offense under § 2251A(b)(1) with Western Union international money transfers

14  originating in the United States to Manila, which were paid for using funds from a bank account

15  Defendant maintained in the United States.

16      Concerning Count One, charging a violation 18 U.S.C. § 2423(b) and (e), to satisfy the foreign

17  commerce requirement the government must prove Defendant attempted to or did travel in foreign

18  commerce with the intent to engage in illicit sexual conduct.  *See United States v. Clark*, 435 F.3d 1100,

19  1108-09 (9th Cir. 2006) (affirming international travel from the United States 18 U.S.C. § 2423(c) as a

20  Constitutional regulation of foreign commerce by Congress).  At trial, the government will offer

21  evidence to satisfy that element in the form of: (1) US Treasury Enforcement Communications System

22  (TECS) records concerning Defendant's travel into and out of the United States, including his departure

23  on or about September 10, 2013; (2) Defendant's bank records, which demonstrate his purchase of items

24  in Sacramento prior to August 10, 2013 (including airline tickets), and his purchase of items in Thailand

25  after that date; and (3) Defendant's Yahoo! chat sessions between August and November 2013 with

26  Cruz and others, which prove Defendant departed from the United States on or about September 10,

27  2013, traveled through Thailand, and on to the Philippines, all with the intent to engage in illicit sexual

28  conduct with a minor when he reached the Philippines.  Such evidence is more than sufficient to satisfy

the foreign commerce element in 18 U.S.C. § 2423(b).  *See United States v. Weingarten*, 623 F.3d 60, 71 (2nd Cir. 2011) (stating that "the mere presence of an intermediate stop outside the United States on a multi-legged journey undertaken for unlawful purposes will [not] immunize a defendant from prosecution under § 2423(b)").[3]

Count Two charges a conspiracy to travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) and (e).  The evidence will prove Defendant took steps in furtherance of that conspiracy from his mother's home in the Eastern District of California, which will satisfy the required jurisdictional and venue nexus.  While not an element of the conspiracy charged in Count Two, the government will satisfy the foreign commerce component of the underlying offense with proof that Defendant conspired to travel from the United Stated, in May 2015, through Thailand, and to the Philippines, to have sex with one or more of three identified minors he selected from images Tandeg sent him between June 2014 and July 2015.

C. **Mens Rea - Knowledge**

Count Six of the Superseding Indictment incorporates a knowledge requirement.  In other words, the United States must prove Defendant knowingly received a visual depiction of sexually-explicit conduct.  This also requires proof Defendant knew that a minor was involved in creating the depiction.  *See* Ninth Circuit Model Criminal Jury Instructions § 8.184; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  The Ninth Circuit Manual of Model Criminal Jury Instructions provides additional guidance on what is required for a showing of knowledge:

> An act is done knowingly if the defendant is aware of the act and does not [act] [fail to act] through ignorance, mistake, or accident.  [The government is not required to prove that the defendant knew that his acts or omissions were unlawful.]  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

---

[3] On August 21, 2017, in the evening, counsel for the government contacted defense counsel by telephone to inform him that the government is considering seeking a Second Superseding Indictment to protect against the risk that Counts One and Two may be pled more narrowly than required.  Defense counsel indicated that he had identified the same issue concerning Count One and planned to address it in his trial brief.  Defense counsel also stated he would not seek a continuance of the trial if the government obtained a Second Superseding Indictment for the limited purpose of modifying the applicable date range and charging language in Count One and the charging language in Count Two.

1   *See* Ninth Circuit Model Criminal Jury Instructions § 5.6.

2       Courts have further explained what constitutes knowing possession where computer files are

3   concerned.  In *United States v. Tucker*, 305 F.3d 1193, 1204-05 (10th Cir. 2002), the court explained

4   that pornographic images were automatically cached to the defendant's hard drive, where he routinely

5   deleted them after Internet sessions.  The court went on to say that the defendant's admission that he

6   knew that the images would be stored on the hard drive demonstrated his knowing possession of child

7   pornography and affirmed his conviction.

8       The Ninth Circuit has also explained that downloading images from the Internet constitutes

9   knowing receipt of child pornography.  For example, in *United States v. Mohrbacher*, 182 F.3d 1041,

10  1048 (9th Cir. 1999), the court noted the ordinary dictionary definition of "receive" and then concluded

11  that an "individual who downloads material takes possession or accepts delivery of the visual image; he

12  has therefore certainly received it."  The court went on to note that computer literature typically defines

13  downloading as receiving or analogizes the concepts.  *Id.*

14      **D.**   **Criminal Forfeiture 18 U.S.C. § 2253**

15      The United States will also attempt to forfeit the defendant's interest in all devices on which he

16  stored child pornography.  The government will seek their forfeiture on the grounds that the defendant

17  used these devices to commit or facilitate the commission of the crimes alleged in the indictment.  These

18  devices include:

19      a.   One black Western Digital external hard drive with power cord, s/n WMC300163553;

20      b.   One Apple iMac with keyboard and mouse, s/n W88333ZDZE3;

21      c.   One silver Apple Laptop, model A1286 (no visible serial number) with Apple
           SuperDrive and power cords;

22

23      d.   One silver Western Digital external hard drive, s/n WXE109UX1026.

        **III.**   **EVIDENTIARY ISSUES**

24      **A.**   **Electronic Data in General**

25      This case involves digital evidence recovered from electronic devices and digital could storage

26  websites used by Defendant and his co-conspirators.  The standard for authenticating computer records

27  is the same for authenticating other records and does not vary simply because the original record

28

1  happened to be in electronic format.  *United States v. Vela*, 673 F.2d 86, 90 (5th Cir. 1982).  The witness

2  who testifies to the authenticity of the computer record need not have special qualifications and need not

3  have programmed the computer or even understand the technical operation of a computer.  *United States*

4  *v. Salgado*, 250 F.3d 438, 453 (6th Cir. 2001) ("[I]t is not necessary that the computer programmer

5  testify in order to authenticate the computer-generated records.")  Instead, the witness need only have

6  first-hand knowledge of the facts to which he testifies, such as examining or seizing the computer from

7  which the records were obtained.  *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997).  The

8  authenticity of a computer program is also generally not a bar to the admission of evidence derived from

9  the use of such program.  Such challenge is defeated by providing sufficient facts to support a finding

10 that the records are trustworthy and the opposing party has the chance to inquire into the accuracy of such

11 records.  *United States v. Briscoe*, 896 F.2d 1476 1494-1495 (7th Cir. 1990).  Typically, the reliability of

12 a computer program can be established by showing that the users of the program actually do rely upon it

13 on a regular basis.  *Id.* at 1494 (holding that computerized records held by a telephone company were

14 admissible).

15        In this case, an experienced FBI Special Agent will testify concerning the retrieval of data from

16 the electronic devices and digital could storage websites used by Defendant and his co-conspirators.

17 The testimony will concern facts within the personal knowledge of the witness.  It will not be based on

18 specialized training or expertise.

19        **B.**    **Images of Child Pornography**

20        The United States intends to publish to the jury approximately twenty-five images of child

21 pornography from among more than 10,000 aggregate images of child pornography found on electronic

22 devices or in digital could storage websites used by Defendant, his co-conspirators, and others.  The

23 admissibility of the those images was briefed in the government's motions *in limine*, which are currently

24 before the Court.

25        **C.**    **Business Records**

26        During the investigation of this matter, the United States executed search warrants and delivered

27 grand jury subpoenas seeking various business records possessed by Yahoo! Inc., Western Union, First

28 US Community Credit Union, Dropbox, Inc., Webminds, Inc. d/b/a Dropshots, and AT&T.  Pursuant to

those search warrants and subpoenas, the United States received records and data associated with the Defendant and related to the acts alleged in the Superseding Indictment, including: records of the Yahoo! Mail account used by Defendant in the course of committing the crimes charged in the Superseding Indictment; records of money transfers made via Western Union in the course of committing those crimes; bank records that reflect those same money transfers, as well as other evidence of Defendants' crimes; records of accounts Defendant accessed to receive and store images of child pornography related to the crimes; and subscriber information linking Defendant to devices and locations where those crimes were committed.

Business records certifications executed by custodians of records for these entities have been produced to Defendant in discovery in this matter, and the records to which the certificates relate have been made available for inspection by Defendant and subsequently produced to Defendant.  The United States provided the defendant with proper written notice of its intention to offer these materials at trial as self-authenticating business records under Federal Rule of Evidence 902(11).  The admissibility of these business records was briefed in the United States' motions *in limine*, which are currently before Court.

### D.   <u>Summary Chart Exhibits</u>

The United States anticipates that FBI Special Agent Scott Schofield (or another witness) will demonstrative, summary exhibits during his testimony.  These summaries will show evidence from voluminous records of Western Union money transfers involving Defendant, pursuant to Federal Rules of Evidence 611(a) and 1006.  Those records are in the form of a large and unwieldy spreadsheet that cannot be easily or understandably presented at trial in its original format.  Indeed, presentation of the relevant data in the original format would require effort to isolate several transactions among many, which are spread across many rows of discrete information with numerous columns and would be extremely difficult to present to the jury in a readable manner.

Federal Rule of Evidence 1006 provides that "the content of voluminous writings, recordings or photographs that cannot be conveniently examined in court[]" may be presented in the form of a "summary, chart or calculation."  The Ninth Circuit has recognized that summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses."  *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir.

1989)9) (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)); *see also United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).  Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence.  *Meyers*, 847 F.2d at 1412.  The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient.  *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990).  Given the volume of calls and text messages between the defendant and his co-conspirator and their distribution between the four telephones at issue, the government respectfully submits these are precisely the type of records for which summaries are appropriately admitted into evidence.  *See Fed. R. Evid*. 1006; *Meyers*, 847 F.2d at 1411-12.

## E.   Chain of Custody

Evidence regarding the chain of custody concerning an item of seized evidence goes to the weight as opposed to the admissibility of the evidence.  *United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989).

## F.   Testimony Regarding a Person's Age

The government expects to elicit testimony from FBI Special Agent Scott Schofield (or others) concerning the age of the victims of certain of Defendant's crimes.  Such lay opinion testimony concerning the age of a child is admissible under Federal Rule of Evidence 701, which "permits a lay witness to give opinion testimony as long as the opinion is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'"  *United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir. 1992) (quoting *Fed. R. Evid*. 701).  In *Yazzie*, the Ninth Circuit held that lay opinion testimony regarding a person's age is "particularly appropriate" because, inter alia, people "form an opinion of a person's age from a 'combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appear[]' to us."  *Id*. at 1255-125656 (quoting *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982)).

1

### G.      "Missing Witness" Argument

2       During trial, there may be witnesses that neither party chooses to call to testify.  A prosecutor's

3  comment on a defendant's failure to call a witness does not shift the burden of proof and is therefore

4  permissible so long as there is no comment on the defendant's failure to testify.  *United States v.*

5  *Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000); *see also United States v. Hernandez*, 145 F.3d 1433,

6  1439 (11th Cir. 1998).  "A 'missing witness' instruction is proper only if from all circumstances an

7  inference of unfavorable testimony from an absent witness is natural and reasonable.'"  *United States v.*

8  *Bramble*, 680 F.2d 590, 591 (9th Cir. 1982) (quoting *Burgess v. United States*, 440 F.2d 226, 234 (D.C.

9  Cir. 1970)).

10

### H.      Presentation of Witnesses

11       It is possible that the government may have to call certain witnesses out of order or recall

12  witnesses in order to maintain an orderly presentation.  This should provide for an efficient presentation

13  of the evidence and assist the jury, the Court, and Defendant, in understanding the evidence being

14  presented.  The government will ask to excuse each witness or make the witness subject to recall at the

15  conclusion of each witness's testimony.

16

### I.      Issues Related to Closing Arguments

17

18       Defendant may call witnesses and the United States may comment on his failure to do so.  "A

19  prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is

20  therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights

21  by commenting on the defendant's failure to testify."  *United States v. Cabrera*, 201 F.3d 1243, 1250

22  (9th Cir. 2000) (citing cases).  If a defendant does testify, a prosecutor may characterize the defendant's

23  testimony as false.  *See id.* at 1250 (citing *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("It

24  is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who

25  has taken the stand.")).

### J.      Counseling for Jurors

26       The Court may authorize counseling for jurors and court personnel exposed to evidence of child

27  pornography.  During their time of service, jurors are considered federal employees.  Consequently,

28

1   jurors may receive counseling through Federal Occupational Health-United States Health and Human

2   Services (FOH-HHS) for trauma incurred by their federal service.  This includes trauma caused by the

3   viewing of images of and the taking of testimony about the sexual molestation of children.  Payment for

4   these sessions is coordinated between the Administrative Offices of the United States Courts' and FOH-

5   HHS.  The United States asks that the jurors be notified of their entitlement to counseling at some point

6   before the end of their service.

7       **K.**    **Forfeiture Allegation**

8       The indictment contains a provision for the criminal forfeiture of any and all interest the

9   defendant has in property set forth above in this memorandum.  Rule 32.2 of the Federal Rules of

10   Criminal Procedure has replaced Rule 31(e) and codified various forfeiture concepts.  Under Rule

11   32.2(b), the Court is required to bifurcate forfeiture from the guilt/innocence phase.  *See Fed. R. Crim.*

12   *P.* 32.2(b)(1)1).  There is, however, no constitutional right to a jury trial of the forfeiture issue.  Thus,

13   absent a timely demand by Defendant, the issue can be determined by the Court in a post-conviction

14   hearing.  *See Fed. R. Crim. P.* 32.2(b)(4)4).  To date, Defendant has made no such demand.  Criminal

15   forfeiture is a part of the sentence; it is not a substantive element of the offense.  *Libretti v. United*

16   *States*, 516 U.S. 29, 38-39 (1995).  Because it is part of sentencing, and fact finding at sentencing is

17   generally established by a preponderance of the evidence, the preponderance standard applies to

18   criminal forfeiture.  See *United States v. Garcia-Guizar*, 160 F.3d 511, 517-18 (9th Cir. 1998).

19       If a party makes a timely request for jury determination of forfeiture, the sole issue for the jury to

20   determine is whether the government has established the requisite nexus between the offense of

21   conviction and the property it seeks to forfeit under the pertinent forfeiture statute—in this case18

22   U.S.C. § 2252(a)(2).  *See Fed. R. Crim. P.* 32.2(b).  Because neither party has requested a jury

23   determination, the government proposes a general verdict.  If Defendant makes a request now, and the

24   Court determines it was timely, the government will submit a proposed special verdict form for this

25   purpose.  Issues of ownership are deferred until the ancillary proceeding phase.  The parties may each

26   waive their right to jury trial on the forfeiture issue.  *Fed. R. Crim. P.* 23(a).

27       **IV.**    **POSSIBLE DEFENSES**

28       Defendant has not provided notice of any defenses for which the Federal Rules of Criminal

1    Procedure require notice.  Therefore, the United States will move to bar any such defense should it be

2    raised during trial.

3          **V.**        **EXCLUSION OF ANY EVIDENCE OFFERED BY THE DEFENDANT**

4         On various dates over the last several months, the United States made written requests for

5    reciprocal discovery from Defendant.  To date, Defendant has produced reciprocal discovery limited to

6    certain test results conducted by a defense investigator and certain documents related to the prior

7    criminal convictions of his co-conspirator.  On or about September 9, 2016, the government moved, *in*

8    *limine*, for an order prohibiting the defendant from introducing any additional, non-disclosed evidence,

9    which the Court granted.

10           **VI.**        **CONCLUSION**

11         The foregoing is a summary of points the government anticipates may arise at trial.  Should any

12    legal issues arise that have not been covered in this trial brief, the government requests leave to submit

13    further briefing as may be necessary.

14                             Respectfully submitted,

15    Dated:  August 21, 2017            PHILLIP A. TALBERT

16                             United States Attorney

17                 By:   *André M. Espinosa*

18                          ANDRÉ M. ESPINOSA
                             COLLEEN M. KENNEDY

19                          Assistant United States Attorneys

20

21

22

23

24

25

26

27

28