UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:15-cr-00227-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S RULE 29 MOTION** |
| MICHAEL CAREY CLEMANS, | |
| Defendant. | |

Following the close of the United States case, Defendant Michael Carey Clemans moved for judgment of acquittal. The Government opposed the motion. ECF No. 93. This Court heard oral arguments on September 5, 2017 and reserved ruling on the oral motion. Id. For reasons explained below, the Court DENIES the motion.

I. BACKGROUND

The Second Superseding Indictment in this case contains six charges against Clemans. Prior to the start of trial, Clemans pled guilty to three of the charges and proceeded to trial on the remaining three charges-- travel and attempted travel with intent to engage in illicit sexual conduct (Count One – 18 U.S.C. § 2423(b) and (e)), conspiracy to travel with the intent to

engage in illicit sexual conduct (Count Two – 18 U.S.C. § 2423(b) and (e)), and buying children (Count Four – 18 U.S.C. § 2251A(b)(1)). These counts arise from Clemans's emails and instant messaging chats with people abroad—communications revealing his intent to produce and receive child pornography and his intent to have sex with minors. The same day Clemans argued his Rule 29 motion, a jury found Clemans guilty on all counts. ECF No. 93.

## II. OPINION

### A. Legal Standard

Federal Rule of Criminal Procedure 29(a) ("Rule 29(a)") "requires the trial court to grant a motion for judgment of acquittal 'if the evidence is insufficient to sustain a conviction.'" United States v. Hazeem, 679 F.2d 770, 772 (9th Cir. 1982). "The district court's function in reviewing a defendant's motion for acquittal is quite narrow. The court, after viewing the evidence in the light most favorably to the government, must determine whether the jury could reasonably find the defendant guilty beyond a reasonable doubt." United States v. Bernhardt, 840 F.2d 1441, 1448 (9th Cir. 1988). "[I]t is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." Id. (citations omitted). Under Rule 29(b), when a "Court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

### B. Analysis

Clemans moves for acquittal on all three counts, arguing

there was insufficient evidence for a rational juror to conclude
beyond a reasonable doubt that he traveled with intent to engage
in illicit sexual conduct, conspired to do so, or bought
children.  The Government maintains there was ample evidence to
support each charge.

        1.   <u>Count One</u>

To sustain a conviction for travel with intent to engage in illicit sexual conduct, the Government must prove (1) Clemans was a United States citizen; (2) beginning on or about September 10, 2013 and continuing through on or about November 15, 2013, the defendant traveled in foreign commerce; and (3) such travel was for the purpose of engaging in any illicit sexual conduct with another person.  <u>See</u> 18 U.S.C. § 2423(b).

Clemans challenges the Government's evidence on Count One by focusing on the second element—specifically, what it means to "travel[] in foreign commerce."  Clemans contends that because his November 2013 travel was between only Thailand and the Philippines, the evidence showed an insufficient U.S. connection to constitute "foreign commerce" under § 2423(b).  The Government disagrees, arguing that Clemans' instant messaging chats with Nelia Cruz in September 2013—chats he sent while in the United States—creates a sufficient territorial nexus to the United States.

The relevant facts are undisputed.  Clemans is a U.S. citizen who was a resident of Bangkok, Thailand at all times relevant to the charges in the Superseding Indictment.  In September 2013, Clemans left the United States, flew to Thailand, and then in November 2013 traveled to the Philippines

to engage in illicit sexual conduct. The issue raised by Clemans in support of his motion is purely legal: Does a two-month gap between travel and the sexual act fall within § 2423(b)'s temporal scope? Although the Ninth Circuit has not answered this precise question, other cases are instructive.

Both parties cite United States v. Weingarten, a Second Circuit case discussing § 2423(b)'s foreign clause element. 632 F.3d 60 (2d Cir. 2011). There, the Government charged Weingarten for serially raping his daughter while abroad. Id. at 61. The Government brought three counts, each corresponding to a separate trip: From Belgium to Israel, from Israel to New York City, and from New York City to Belgium. Id. at 62-63. A jury convicted Weingarten on all counts. Id. at 63. He appealed the count pertaining to his Belgium-to-Israel travel, arguing, as Clemans does here, that he did not travel in foreign commerce because there was no territorial nexus to the United States. Id. at 64. The Second Circuit agreed and reversed his conviction for his Belgium-to-Israel travel, holding that "travel between two foreign countries, absent *any* territorial nexus to the United States, does not constitute 'travel[] in foreign commerce' for the purpose of § 2423(b)." Id. at 61-62 (original emphasis).

Analogizing to Weingarten, Clemans splits his travel into discreet trips—U.S. to Thailand (trip 1) and Thailand to Philippines (trip 2)—arguing the latter fails Weingarten's U.S.-nexus test, and so this Court should grant his motion for acquittal on Count One. The Government, however, highlights Weingarten's critical caveat:

4

> We do not suggest, of course, that the mere presence of an intermediate stop outside the United States on a multi-legged journey undertaken for unlawful purposes will immunize a defendant from prosecution under § 2423(b). An offender violates the law when he embarks on travel with the requisite illicit purpose . . . and mere stops along the way do not deprive travel of its territorial nexus to the United States.

Id. at 71 (citing United States v. Clark, 435 F.3d 1100, 1119 (9th Cir. 2006); United States v. Bredimus, 234 F. Supp. 2d 639, 645-46 (N.D. Tex. 2002)). Acquitting Clemans on Count One, the Government argues, would contravene Weingarten's caveat.

The Court agrees with the Government. Construed in the Government's favor, there is sufficient evidence to deny Clemans' Rule 29 motion. The Government's theory in this case, unlike in Weingarten, is that Clemans took only one trip: It started in California and continued until he arrived in the Philippines. Equally important, the Government in Weingarten could not prove he formed the requisite intent in the United States linking his travel between Belgium and Israel because Weingarten had lived in Belgium for 13 years. Weingarten, 632 F.3d at 62-63. But, here, the requisite link exists: FBI Special Agent Scott Schofield testified about instant messages between Clemans and Nelia Cruz in September 2013, while Clemans was still in California—messages that clearly show his desire to have children pose in sexually explicit ways and to have sex with minors. This testimony demonstrates that Clemans acquired the requisite intent while in the United States and thus establishes the necessary U.S. nexus.

The fact that two months passed between Clemans' travel
from the U.S. and his arrival in the Philippines does not alter
this conclusion.  In United States v. Clark, a case discussing
§ 2423(c), a provision criminalizing the sexual conduct (rather
than merely the intent to engage in it) also uses the phrase
"travels in foreign commerce."  435 F.3d 1100, 1102 (9th Cir.
2006).  In Clark, the defendant traveled from the United States
to Cambodia via Japan, Thailand, and Malaysia.  Id. at 1103.  He
pled guilty to his § 2423(c) charge, but appealed on
constitutional and jurisdictional grounds, asking the Ninth
Circuit to address whether § 2423(c) violated the Foreign
Commerce Clause (an issue the Weingarten court avoided).  Id. at
1107.

         In holding that Congress acted constitutionally, the Ninth
Circuit explained "the lapse in time between [Clark's] most
recent transit between the United States and Cambodia and his
arrest was less than two months.  We see no plausible reading of
the statute that would exclude its application to Clark's
conduct because of this limited gap."  Id. at 1108.  Stated
differently, Clark held that a time lapse between a defendant's
travel and his sex act rarely precludes prosecution under the
statute.  But the Ninth Circuit left open a critical question,
noting that "[w]hether a longer gap between the travel and the
commercial sex act could trigger constitutional or other
concerns is an issue we leave for another day."  Id. at 1108
n.11.

         Recently, a California district court extended Clark's
reasoning to a five-month lapse.  United States v. Boyajian, No.

CR 09-933(A)-CAS, 2016 WL 3751945 (C.D. Cal. July 11, 2016). There, the defendant moved for acquittal, arguing his conduct fell outside § 2423(c)'s reach based on the five-month gap between his foreign travel and his illicit sexual conduct. Id. at *15.

The district court denied his motion, explaining "Clark still stands for the general proposition that, where there has been a 'limited gap' between the defendant's travel in foreign commerce and the charged conduct, section 2423(c) is still applicable." Id. at 16. The Court noted "nothing in the statutory language of section 2423(c) imposes a time limit between travel and sexual misconduct," and "defendant cites no case, before or after Clark, in which a court dismissed a section 2423(c) count because of a gap between travel and illicit conduct or arrest." Id. United States v. Bredimus, a § 2423(b) case, augments this conclusion. 234 F. Supp. 2d 639, 645 (N.D. Tex. 2002), affirmed by United States v. Bredimus, 352 F.3d 200 (5th Cir. 2003) (holding that a one-month lapse between defendant's U.S. departure and his arrival to Thailand to have sex with minors fell within § 2423(b)'s temporal scope because the defendant "formed the requisite intent while he was in the United States" and so his traveling to Japan and China for business during the interim "[was] of no moment.").

Although the Ninth Circuit has yet to define § 2423(b)'s temporal scope, the cases above are persuasive. Reading all four together, this Court finds the two-month gap between Clemans' departure from the United States to his arrival in the Philippines falls within § 2423(b)'s temporal scope. Ruling

7

otherwise would condone Weingarten's fear: It would immunize Clemans from prosecution for mere stops along the way. The Court denies defendant's motion for acquittal on Count One.

### 2. Count Two

To sustain a conviction for conspiracy to travel with intent to engage in illicit sexual conduct, the Government must prove (1) beginning on or about June 24, 2014, and continuing through on or about July 24, 2015, there was an agreement between two or more persons to commit the crime of travel with intent to engage in illicit sexual conduct; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. See 18 U.S.C. § 2423 (b), (e).

Count Two concerns conduct occurring between June 2014 and July 2015. Second Superseding Indictment, ECF No. 79. Clemans concedes there is considerable evidence showing overt acts in furtherance of producing child pornography, but argues no evidence shows an overt act in furtherance of travel, so he is entitled to a judgment of acquittal on Count Two. The Government disagrees, citing, inter alia, Clemans' instant messages with co-conspirator Lyan Tandeg in which Clemans says once he gets his passport he will come to the Philippines; he also paid her money for her efforts, which, the Government argues, was a substantial step in furtherance of the conspiracy.

The Court finds there is more than sufficient evidence to deny Clemans' Rule 29 motion on Count Two. In an instant

messaging chat dated October 23, 2014, Clemans instructed his co-conspirator to deliver money he had sent to procure a minor for illicit sexual conduct: "Any evidence that [the minor] has been fucked, we get our money back . . . . But I am paying for her now. We basically will own her to do what we want with her." Ex. 45. In May 2015, Clemans instructed his co-conspirator to identify a private place to have sex with minors. Ex. 52. Two months later, Clemans said he would probably be in the Philippines by September 1st. Ex. 52.2. By focusing on travel, Clemans is splitting hairs. Clemans and Tandeg's agreement—he pays her to find, photograph and arrange sex with minors in the Philippines assumed (and clearly requires) travel. The Government does not have to prove (and did not prove) that Clemans actually travelled. The conspiracy in this case was clearly established even though every part of the conspiracy (i.e. travel) was not completed. The criminal objective was to travel to the Philippines for the purpose of illicit sexual conduct and all the steps in furtherance of this criminal objective were accomplished but for Clemans actual trip. In the light most favorable to the Government, there was sufficient evidence for a jury to find Clemans guilty beyond a reasonable doubt for conspiring to travel with intent to engage in illicit sexual conduct. Defendant's motion for acquittal on Count 2 is denied.

3. Count Four

To sustain a conviction for buying children, the Government must prove (1) beginning on or about June 24, 2015 and continuing through on or about July 24, 2015, the defendant purchased or

9

otherwise obtained custody or control over minors M.Q., J.U., and/or E.S, or offered to purchase or otherwise obtain custody or control over M.Q., J.U., and/or E.S.; (2) the defendant knew that, as a consequence of the purchase or obtaining of custody, M.Q., J.U., and/or E.S. would be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct, or with the intent to promote the engaging in of sexually explicit conduct by M.Q., J.U., and/or E.S. for the purpose of producing any visual depiction of such conduct; (3) the offer was communicated or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer. See 18 U.S.C. § 2251A(b)(1)-(2).

Raising another statutory interpretation argument, Clemans moves for acquittal on Count Four. He focuses on the "custody or control" element, which Congress has defined as "includ[ing] temporary supervision over or responsibility for a minor whether legally or illegally obtained." 18 U.S.C. § 2256(7). Yet Clemans contends this cannot be what Congress intended, and that the Court must more robustly define "custody or control," otherwise it makes § 2251A essentially a lesser-included offense of production of child pornography under 18 U.S.C. § 2251(a). The penalties for § 2251A, however, are considerably more dire than for §2251(a)—30 year mandatory minimum versus a 15 year mandatory minimum-- and so Clemans urges this Court to interpret § 2251A in a way that does not make it redundant with child pornography laws.

In response to this Court's question (i.e., what gives the

Court the right to stray from the statutory definition), Clemans cited a dissenting judge's opinion in United States v. Buculei, 262 F.3d 322 (4th Cir. 2001). Judge Michael's partial dissent from the majority's conclusion that an intoxicated 13-year-old girl was not under the control or custody of the defendant made the same statutory argument Clemans makes here. Id. at 333-36. But this partial dissent in a factually distinguishable case from a non-controlling circuit does not warrant straying from the statutory definition of "custody or control."

Although Clemans has raised yet another interesting legal issue, the Court is unpersuaded. Congress has defined "custody or control" as "includ[ing] temporary custody or control over or for a minor whether legally or illegally obtained," see § 2256(7), and Buculei adopted this definition. Besides the lone dissent above, Clemans cites no authority supporting his position. The Government offered evidence of child pornography produced at Clemans' direction and in the light most favorable to the Government, there is sufficient evidence that Clemans obtained, at the very least, temporary custody or control over the minors during their photoshoots. Defendant's motion for acquittal on Count Four is also denied.

III. ORDER

For the reasons set forth above, the Court DENIES Defendant's Rule 29 motion.

IT IS SO ORDERED.

Dated: September 8, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

11