1     IN THE UNITED STATES DISTRICT COURT; SACRAMENTO, CALIFORNIA
              FOR THE EASTERN DISTRICT OF CALIFORNIA
2           BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5               vs.                        No. Cr-15-00227 JAM

6    MICHAEL CAREY CLEMANS,

7                    Defendant.
     _____

8

9                      REPORTER'S TRANSCRIPT

10                       MOTION TO DISMISS

11                   AUGUST 9, 2016; 10:33 A.M.

12
     APPEARANCES:
13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              501 I Street; Tenth Floor
14                            Sacramento, California 95814
                              By:  JOSH F. SIGAL
15                            Assistant United States Attorney

16   For the Defendant:      DANIEL OLMOS
                             Attorney at Law
17                           600 University Avenue
                             Palo Alto, California 94301

18

19

20
     Court Reporter:         MICHELLE L. BABBITT, CSR#6357
21                           Official Court Reporter, USDC
                             501 I Street, Suite 4-200
22                           Sacramento, California 95814
                             916-448-7938

23

24

25        Transcript produced by computer-aided transcription

```
 1               SACRAMENTO, CALIFORNIA, AUGUST 9, 2016; 10:33 A.M.

 2                              ---o0o---

 3          THE CLERK:  Calling criminal Case 15-0227, United

 4   States versus Michael Carey Clemans.

 5          MR. SIGAL:  Good morning, Your Honor.  Josh Sigal for

 6   the United States.

 7          THE COURT:  Good morning.

 8          MR. OLMOS:  Good morning, Your Honor.  Daniel Olmos

 9   appearing with Mr. Clemans.  Mr. Clemans is before the court

10   in custody.

11          THE COURT:  Good morning.  This is a motion to

12   dismiss Count Two of the indictment pursuant to Federal Rule

13   of Criminal Procedure 12(b).  I've reviewed the brief filed on

14   May 23rd, the government's opposition to the motion to dismiss

15   Count Two, and the reply in support of the motion to dismiss.

16      Count Two charges Mr. Clemans with a violation of 18

17   U.S.C. Section 2251A(b)(1) and (2)(A), the argument being that

18   the language in Count Two is not specific enough.  The

19   government has responded.

20      Mr. Olmos, the cases that I've reviewed and are cited in

21   the briefs are pretty clear in terms of allowing the

22   government to simply, as this indictment in this count does,

23   simply parrot the language of the statute.  There's a case

24   that talks about standard with respect to motions to dismiss

25   indicating that the indictment must contain a plain, concise,
```

1    and definite written statement of the essential facts

2    constituting the offense charged.

3        The Ninth Circuit has repeatedly made clear that an

4    indictment setting forth the elements of the offense is

5    generally sufficient to survive a motion to dismiss.  In fact,

6    in the Ninth Circuit, the use of a bare information bones,

7    that is one implying the statutory language alone, is quite

8    common and entirely permissible so long as the statute sets

9    forth fully, directly, and clearly all essential elements of

10   the crime to be punished.

11       It's clear that this is an aiding and abetting theory.

12   Mr. Sigal didn't include the specific aiding and abetting

13   statute in the indictment itself.  There really isn't -- I

14   don't disagree with you, Mr. Olmos, that there isn't any

15   language.  Those words aren't used anywhere in this

16   indictment.

17       But, again, looking at case law in the Ninth Circuit, it's

18   clear that "aiding and abetting" is implied in every federal

19   indictment for a substantive offense and the government is not

20   required to include the specific aiding and abetting statute

21   in the crime itself.

22       I'm not incorrect, right, Mr. Sigal, that your theory is

23   an aiding and abetting theory?

24           MR. SIGAL:  At this point, Your Honor, that's at

25   least one of them.

1          THE COURT:  Well, there's no evidence from what I

2    read that Mr. Clemans himself actually had possession of any

3    children.  He used somebody over in the Philippines.  He sent

4    money, and the allegation is that that person that he used

5    would obtain the children from the money that he provided.

6          MR. SIGAL:  Yes, that's true.

7          THE COURT:  There's nothing, there's no evidence

8    based on what I've seen in the briefs, that he actually was in

9    possession of or actually himself had a child in his custody

10   or control.

11         MR. SIGAL:  Yes, Your Honor.  That's why in that

12   count the government does allege Section 2 along with 2251 --

13         THE COURT:  You do?  Oh, I see.  That's not

14   2251(2)(A)?  That's supposed to be 18 U.S.C. Section 2?

15         MR. SIGAL:  Yeah.  This is U.S.C. Section 2 and

16   2251A(b)(1).

17         THE COURT:  That's what's confusing.  Again, so I'm

18   clear, it's not 2251(2)(A).  What you meant was it's 18 U.S.C.

19   Section 2251A(b)(1) and 18 U.S.C. Section 2?

20         MR. SIGAL:  Yes.

21         THE COURT:  You just didn't put the 18 U.S.C. in

22   front of it.  So you did allege aiding and abetting?

23         MR. SIGAL:  Yes.  The court is right.  It's not

24   necessary.  The court is right.  It doesn't say "aiding and

25   abetting" anywhere in the indictment.

1            THE COURT:  Okay.  Actually, in the last line, I just

2    noticed in line 16, it does allege a violation of 18 United

3    States Code Section 2.

4        Given that, Mr. Olmos, I don't see under the case law I

5    can dismiss the charge.

6            MR. OLMOS:  Your Honor, I appreciate that and I would

7    like to respond.

8            THE COURT:  Go ahead.

9            MR. OLMOS:  And nothing I say is intended to make

10   light in any way of the allegations in the indictment that I

11   believe the government has sufficiently pled, but the narrow

12   issue -- the court has hit the nail on the head -- it's

13   whether a bare recitation of the indictment in this case can

14   be sufficient under 12(b)(6) under the Due Process Clause.

15       Your Honor, from our perspective in this case it isn't.  I

16   think the case law we cite, going all the way back to

17   Cruikshank which is almost 150 years, but more recently the

18   Russell case in 1962 in the United States Supreme and the

19   Ninth Circuit case in Mancuso, which I think is a 2013 case,

20   if I'm not mistaken, what they say it is sufficient in those

21   cases where the statutory language is clear and unambiguous.

22       Our position here, Your Honor, with respect to that

23   essential element of 2251A, the custody and control element,

24   it is unclear and it's ambiguous.  There is no way that simply

25   saying you have custody and control by reciting the statutory

1    language is sufficient to put us on notice of how and when

2    that happened.

3         The reason that we cite these cases from around the

4    country that discuss that element is not because, as the

5    government asserts, that we're trying to encourage the court

6    to impose an incorrect legal standard.

7         What we're doing is we're saying the courts around the

8    country can't agree of what "custody and control" means.  If

9    the Ninth Circuit has a very different interpretation of what

10   "custody and control" is then the Fourth and Fifth Circuits,

11   then the language by its definition -- it's like posing the

12   question answers itself that the statutory language is not

13   clear and it's ambiguous.

14        The case law is clear that in those circumstances when you

15   are interpreting statutes whose language is unclear and

16   ambiguous, particularly with respect to essential elements,

17   that a bare recitation of the statutory language is not

18   sufficient.  That's our position here, Your Honor.

19        Again, as I think we say in one of our briefs, I don't

20   know what this court would say is sufficient to comply with

21   that statutory language.  I don't know what the Ninth Circuit

22   would say about it, but we don't have to make that decision

23   here.

24        The very fact that we have to have a discussion about what

25   that statutory language means, the case law is clear that the

1    Ninth Circuit and the Supreme Court means that the government

2    has to do more than recite the statutory language.  That's our

3    position.

4              THE COURT:  That sounds a lot like a wonderful

5    argument if we get to the point where we have to argue over

6    jury instructions.  What you're doing is asking me to dismiss

7    a charge in the indictment, and given the case law that I read

8    -- I know you disagree and I understand your theory -- but the

9    bare bones recitation of the statute seems to be fine under

10   Ninth Circuit law.

11      I get the argument and it's something the court would have

12   to figure out in terms of jury instructions if we ever got to

13   that point as well.

14      Anything further you want to add?

15             MR. SIGAL:  Your Honor, I do agree that there's an

16   inherent tension between the Cruikshank case that defense

17   cites from 1875 and more recent Ninth Circuit cases.  I'm

18   referring to the Zavala case where it says indictments that

19   follow the statutory language are generally sufficient if the

20   statute sets forth the elements of the crime, although it's

21   not necessarily a cure-all.

22      There is an inherent tension there, but I think the court

23   has it right that there's no authority that would allow this

24   count to be dismissed at this point.

25      The one element that the defense is challenging, the

1    "custody or control," the full element is "purchase or offer

2    to purchase or otherwise obtain custody or control," and I

3    don't think there's any dispute.  Because there's scant case

4    law, I think we're sort of in a little bit of uncharted

5    territory, but "purchase" is sort of a subset of "custody and

6    control."

7         "Custody and control" is sort of a catch-all, but

8    "purchase" or "offer to purchase" is sort of a subset in that

9    and there's no dispute -- there's no challenge of that word.

10        The indictment which incorporates paragraphs 2 through 17

11   of that count clearly set forth on nine separate occasions

12   money was sent, on four separate occasions images were

13   received, and essentially lays out a big part of the theory of

14   the case, even though that's not necessary.

15             MR. OLMOS:  If I could respond?  I know I'm swimming

16   upstream here.

17             THE COURT:  Go ahead.  Make your record.  It is an

18   issue that may go up on appeal.

19             MR. OLMOS:  One, there is this fascinating discussion

20   in that Fourth Circuit case of Buculei, which is

21   B-U-C-U-L-E-I, that the dissent makes, which is 2251A has to

22   be different from 2251C, for example.  It has to be different.

23   There has to be that additional essential element above and

24   beyond the production itself which necessarily includes some

25   temporary custody or control of a minor.

1      Because we're moving then from a 15-year mandatory minimum

2   to a 30-year mandatory minimum, that essential element here

3   today has to mean something.  It has to mean something

4   significant.  It's not simply enough to say, well, we pled

5   2251 so that means that we've met the "custody or control"

6   elements of 2251A.  That's one.

7      Two, the Russell case that we cite, the 1962 Supreme Court

8   case says, and I'm quoting:

9      Undoubtedly, the language of the statute may be used in

10      the general description of defense -- that's what we have

11      here -- but it must be accompanied with such a statement

12      of the facts and circumstances as will inform the accused

13      of the specific offense coming under the general

14      description with which he is charged.

15      That's not 150 old precedent.  That's United States

16   Supreme Court precedent from a couple of decades ago, and

17   there's nothing in the Ninth Circuit or United States Supreme

18   Court since then which has disagreed with that.  Russell dealt

19   with a motion to dismiss.  It was not a sufficiency of the

20   evidence case.  It was not a jury case.

21      With that I'll submit, Your Honor.

22          THE COURT:  Anything further, Mr. Sigal?

23          MR. SIGAL:  Submit, Your Honor.

24          THE COURT:  The court denies the motion to dismiss

25   Count Two of the indictment.  The case will proceed on all

1   charges in the indictment.

2        Do we have a status conference set?

3            MR. OLMOS:  I don't think we do, Your Honor.  Mr.

4   Sigal and I discussed October the 4th.  I know that's going

5   out a little ways.  What we intend that to be would be a trial

6   setting date if we can't come up with some kind of resolution

7   before then.

8            THE COURT:  Is that agreeable, Mr. Sigal?

9            MR. SIGAL:  It is, Your Honor, and the government

10  would seek a T4 exclusion until that time.  The defense still

11  needs to review the digital evidence.  There's a protective

12  order in place to govern the review of that evidence.

13           THE COURT:  Do you agree with that, Mr. Olmos?

14           MR. OLMOS:  I do, Your Honor.

15           THE COURT:  Okay.  Then we will come back on

16  October 4th, 2016, 9:15 a.m. in this court for further status.

17       The court will exclude time between now and October 4th

18  under the Speedy Trial Act for all the reasons stated by

19  counsel and agreed to by both counsel.  A T4 exclusion is

20  warranted in this case.

21       See you in October.

22       (Proceedings concluded at 10:48 a.m.)

23                        ---o0o---

24  /////

25  /////

1                         CERTIFICATION

2          I, Michelle L. Babbitt, certify that the foregoing is

3    a correct transcript from the record of proceedings in the

4    above-entitled matter.

5          Dated:  August 31, 2018.

6

7

8                              /s/ MICHELLE L. BABBITT
                               MICHELLE L. BABBITT CSR #6357
9                              Official Court Reporter
                               United States District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25