UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CAREY CLEMANS,<br><br>Defendant. | No. 2:15-cr-00227-JAM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES OF AMERICA'S REQUEST FOR RESTITUTION** |

    Defendant Michael Carey Clemans ("Defendant" or "Clemans") pled guilty to conspiring to produce child pornography, producing and attempting to produce child pornography, and receiving child pornography. See Minutes for Proceedings Held August 28, 2017, ECF No. 89. At trial, a jury convicted him of also traveling and attempting to travel with intent to engage in illicit sexual conduct, conspiring to travel with intent to engage in illicit sexual conduct, and buying of children.[1] Jury Verdict, ECF No. 97. Clemans was sentenced to life in prison on January 23, 2018. See Minutes, ECF No. 114; Amended Judgment, ECF No. 116. The

---

[1] Upon the parties' stipulation, the Court vacated the April 17, 2018 restitution hearing and ordered this matter submitted for decision on the written briefs. Stipulation And Order, ECF Nos. 124, 125.

1

United States of America (the "Government") now requests the Court order Clemans to pay restitution to Clemans's victims. Mem., ECF No. 126. Clemans opposes in part. Opp., ECF No. 130. For the reasons set forth below, the Court grants in part, and denies in part, the Government's request.

I. FACTUAL AND PROCEDURAL BACKGROUND

During investigations in 2014 and 2015, the Government discovered Clemans's participation in criminal conspiracies to produce child pornography. Clemans would travel from the United States to the Philippines intending to engage in illicit sexual conduct with young girls secured by Philippine national Lyan Tandeg.

In July 2015, federal agents executed a search warrant at the home of Clemans's mother in Sacramento and arrested him on a federal criminal complaint. After executing an additional warrant to search Clemans's electronic devices, forensic review revealed 27,469 total images of child pornography (including 173 videos). These images included the following children:
- (1) "Maureen" of the "Lighthouse" series;
- (2) "Emily" of the "Tightsngold" series;
- (3) "Vicky" of the "Vicky" series;
- (4) "Pia," "Maya," and "Ava" of the "Sugar Sweet" series; and
- (5) "Angel," "Nicole," and "Ishin" (identified subjects of images Clemans conspired to produce and receive from Tandeg).

In the summer of 2017, the grand jury returned a Superseding

Indictment charging Clemans with attempted travel/travel with intent to engage in illicit sexual conduct (18 U.S.C. § 2423(b) and (e)) (Count One); conspiracy to travel with intent to engage in illicit sexual conduct (18 U.S.C. § 2423(b) and (e)) (Count Two); conspiracy to produce child pornography (18 U.S.C. §§ 2251(c) and (e)) (Count Three); buying of children (18 U.S.C. § 2251A(b)(1)) (Count Four); attempted production/production of child pornography (18 U.S.C. § 2251(c)) (Count Five); and receipt of child pornography (18 U.S.C. 2252(a)(2)) (Count Six). ECF Nos. 38, 79.

After Clemans was sentenced to life in prison as a result of pleading to three counts and being convicted of the remaining three counts, the Government requested Clemans pay restitution to victims in the following amounts:

- (1) $2,500 to "Maureen" of the Lighthouse series;
- (2) $3,000 to "Emily" of the Tightsngold series;
- (3) $10,000 to "Vicky" of the Vicky series;
- (4) $0 each to "Pia," "Ava," and "Mya" of the Sugar Sweet series;
- (5) at least $4,927 each to "Angel," "Nicole," and "Ishin" (subjects of images Clemans conspired to produce and receive from Tandeg).

Clemans opposes the restitution requests on behalf of "Maureen," "Emily," and "Vicky." Opp. Clemans does not oppose the restitution requests on behalf of "Angel," "Nicole," and "Ishin." Id.

///

///

II. OPINION

A. Legal Standard

18 U.S.C. Section 2259 states that for child pornography crimes, the Court "shall order restitution for any offense under [Chapter 110 of Title 18]." 18 U.S.C. § 2259(a). Orders of restitution under Section 2259 direct the defendant to pay the full amount of the victim's losses. 18 U.S.C. § 2259(b)(1). The full amount of the victim's losses includes any costs incurred by the victim for:

- medical services relating to physical, psychiatric, or psychological care;
- physical and occupational therapy or rehabilitation;
- necessary transportation, temporary housing, and child care expenses;
- lost income;
- attorneys' fees, as well as other costs incurred; and
- any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3). Further, the Court may not decline to issue an order under Section 2259 because of the fact that a victim has, or is entitled to, receive compensation for his or injuries from the proceeds of insurance or any other source of compensation. 18 U.S.C. § 2259(b)(4)(B).

B. Analysis

Because the parties agree "Angel", "Nicole", and "Ishin" are each entitled to $4,927 in restitution, the Court grants the Government's request for $4,927 on behalf of each of these victims. See Mem. at 8-9; Opp. at 1. Defendant argues

"Maureen", "Emily", and "Vicky" are not entitled to restitution because the requests do not comport with the requirements established in Paroline v. United States, 572 U.S. 434 (2014). Opp. at 1-2. The Court agrees with Defendant that Vicky is not entitled to restitution, but agrees with the Government that Emily and Maureen are entitled to restitution.

In Paroline, the Supreme Court held that when a defendant possesses a victim's images and that victim has outstanding losses caused by the continuing traffic in those images but it is impossible to trace a particular amount of losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying Section 2259 should order restitution in an amount comporting with the defendant's relative role in the causal process that underlies the victim's general losses. 572 U.S. at 458-59. The Supreme Court acknowledged that there is no precise mathematical inquiry a court can use to decide the restitution amount, but recommended looking at the following factors: (1) the number of past criminal defendants found to have contributed to the victim's general losses; (2) reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; (3) any available and reasonably reliable estimate of the broader number of offenders involved; (4) whether the defendant reproduced or distributed images of the victim; (5) whether the defendant had any connection to the initial production of the images; (6) how many images of the victim the defendant possessed; and (7) other facts relevant to the defendant's relative causal role. Id. at 459-60. The

Supreme Court acknowledged the difficulty of this approach and that "courts can only do their best to apply the statute as written in a workable manner[.]" Id. at 462.

It is the Government's burden to prove the amount of the victim's losses by a preponderance of the evidence. See Paroline, 572 U.S. at 462. The defendant's portion of the general losses suffered by the victim cannot include losses caused by the original abuse. United States v. Galan, 804 F.3d 1287, 1289 (9th Cir. 2015). Those losses caused by the original abuse should be disaggregated from the losses caused by the ongoing distribution and possession to the extent possible. Id. at 1291. A victim must receive restitution where there is ongoing possession of the victim's images. In re: Amy, 710 F.3d 985, 987 (9th Cir. 2013) (ruling that it was an abuse of discretion to order no restitution to Vicky where the victims established a causal connection between the defendant's offense and the victims' losses). But the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim. U.S. v. Darbasie, 164 F. Supp. 3d 400, 406 (E.D.N.Y. 2016) (citing U.S. v. DiLeo, 58 F. Supp. 3d 239 (E.D.N.Y. 2014)).

        1.    The Government's Request For Restitution On Vicky's Behalf

The Government requests $10,000 in restitution on behalf of Vicky for her psychological, educational and vocational losses, and her attorney's fees because her losses are at least partially attributable to the ongoing trafficking of images by people like Clemans. Mem. at 10-11. The Government, however,

6

concedes that the psychological, education, and vocational costs are not disaggregated as is required by Galan. Opp. at 11. The Government claims that because the Government cannot prove by a preponderance of the evidence what losses are a result of ongoing trafficking of Vicky's abuse, the Court cannot engage in the disaggregation required by Galan and proceed to the Paroline analysis as to these losses. Id. The Government claims Vicky is entitled to total disaggregated legal fees and costs of $92,371 because they deal only with the attorney's efforts to advocate for Vicky in relation to ongoing trafficking and not the original abuse. Opp. at 11-12. The Government also claims Vicky is entitled to total disaggregated ongoing medical losses of $3,266,093 because these costs exclude those associated with the original abuse. Id. at 11-12 (citing Sealed Gov. Ex. 3, 5-8).

Applying the Paroline factors, the Government contends that there may be many more future offenders who may not be caught since Vicky is a series of child pornography that will remain heavily trafficked. Id. at 12-13. While Clemans had 2,106 images of Vicky on his computers, this represents a small portion of Clemans' total collection that exceeded 27,000 images. Id. at 13. There is no evidence that Defendant distributed images of Vicky or had any role in the initial production in images of Vicky. Mem. at 13.

The $10,000 restitution request represents a small percentage of Vicky's more than $3 million of ongoing and future medical costs related to the trafficking of her images plus the $92,371 in relevant legal costs. See Mem. at 13 (citing Sealed

7

Gov. Exs. 3-6). But Vicky has received an average of $14,489.84 in restitution award payments from 755 defendants (from approximately 946 prior restitution orders), which results in a total of $10,939,829.20. See id. at 12 (citing Sealed Gov. Ex. 3). This amount far outweighs the Government's alleged total disaggregated ongoing medical losses and attorney's fees total of $3,358,464. Id. So, awarding the requested restitution amount would not comport with the purpose of restitution—to make victims whole and restore them to the position they occupied prior to the Defendant's actions. See United States v. Ferenci, No. 1:08-CR-0414 AWI, 2009 WL 2579102, at *5 (E.D. Cal. Aug. 19, 2009) ("The purpose of restitution is to make the victims whole while the Sentencing Guidelines serve a punitive purpose") (citing United States v. Crandall, 525 F.3d 907, 916 (9th Cir. 2008)) and United States v. Brock-Davis, 504 F.3d 991, 998 (9th Cir. 2007)).

The Court therefore denies Vicky's request. Applying the Paroline factors does not conclusively resolve whether an award of restitution for Vicky against Clemans is appropriate. But Vicky has already received far more in restitution awards than her total disaggregated ongoing medical losses and attorney's fees. Accordingly, the Court finds that awarding restitution to Vicky against Clemans contravenes the purpose of restitution. See Darbasie, 164 F. Supp. 3d at 406 ("the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim.").

///

///

### 2. The Government's Request For Restitution On Emily's Behalf

The Government argues Emily is entitled to $3,000 in restitution, an amount reflecting a small percentage of her significant, disaggregated ongoing and future medical costs caused by the trafficking of sexually explicit images of her past abuse. Mem. at 15-16 (citing Sealed Gov. Ex. 7, at 4-6). The Government acknowledges Emily's counsel requests an award of $25,000 but concedes that this request is based on a proposed-but-not-passed mandatory restitution law that stalled in Congress in 2015. Id. (citing Amy and Vicky Child Pornography Restitution Improvement Act of 2015, S. 295, 114th Cong. (2015); H.R. 595, 114th Cong. (2015)).

The Government contends Emily's disaggregated medical losses are $411,000 to $439,125 based on Dr. Skoler's 2016 psychological analysis. Mem. at 14 (citing Sealed Gov. Ex. 8 at 36-41). Dr. Skoler acknowledges the challenge of quantifying what part of Emily's lifetime psychological treatment needs are based on the ongoing trade of images of her abuse, but contends that the ongoing trade causes 75% of her losses. Id.

Applying the Paroline factors, the Government claims it is aware of approximately 40 prior restitution orders to Emily averaging $2,188.55 but is unaware of actual payments. Mem. at 14-15. The Government states there may be many future offenders in watching the images of Emily, but that there is no evidence Clemans initially produced, reproduced or distributed images of Emily. Id. While Clemans possessed at least 944 images of Emily, this amount represents a small portion of Clemans's total

9

collection. Id.

The Court, in accord with Defendant's request, will apply his arguments against Vicky's request to Emily's and Maureen's requests. Opp. at n.1. Distinct from the payment of the restitution awards that Vicky received, payment from the 40 restitution orders awarded to Emily at an average of $2,188.55 fall well short of compensating Emily for her disaggregated ongoing medical losses of $411,000 to $439,125. Applying the Paroline factors to Emily's request and acknowledging that her disaggregated losses have not yet been fully compensated, the Court grants the Government's request for a restitution award to Emily of $3,000.

### 3. The Government's Request For Restitution On Maureen's Behalf

The Government requests the Court order Clemans to pay Maureen $2,500 in restitution for her medical and psychological losses because her losses are at least partially attributable to the ongoing trafficking of images by people like Clemans. Mem. at 19 (citing Sealed Gov. Ex. 10 at 24). The Government contends it is asking for lower than the $10,000 that Maureen's lawyer requests because that request may not be based on the Paroline considerations. Id. The Government concedes that Maureen's estimated documented total losses of $170,200 to $189,800 are not specifically disaggregated as required by Galan, 804 F.3d at 1289. Mem. at 16. But the Government claims that these amounts should still be interpreted as being disaggregated because psychologist Dr. Green's report about Maureen relates only to Maureen's medical and psychological losses arising out of the

10

continued trade in images of her abuse from the Lighthouse Series and not the original abuse. Mem. at 16-17 (citing Sealed Gov. Ex. 10 at 19). The Court agrees.

Applying the Paroline factors, the Government is unsure of how many past criminal defendants have contributed to Maureen's restitution, but the average restitution award is for $3,212.95. Id. While there may be many future offenders who watch Maureen's images but are never caught, the Government concedes there is no evidence Clemans initially produced, reproduced, or distributed images of Maureen. Id. at 18. The Government asserts that there were at least 10 sexually explicit images of Maureen on Defendant's computers but that this amount represents a small portion of Defendant's total collection. Id.

Applying the Paroline factors, the Court grants Maureen's request for $2,500 in restitution. While Clemans possessed a small number of her images on his computer, the knowledge that people like Clemans possessed her pornography has contributed to Maureen's disaggregated losses. See Sealed Gov. Ex. 10. Further, the amount requested does not result in Maureen receiving more in restitution than her disaggregated losses. See Darbasie, 164 F. Supp. 3d at 406 ("the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim.")

### 4. Pia, Maya, and Ava

While the attorneys for Pia, Maya, and Ava each request a restitution award of $5,000, the Government concedes that the Court lacks authority to order restitution to these victims because their losses are not disaggregated as required by Galan.

Mem. at 19-21.  The Court agrees—there is no evidence of losses in Dr. Hedrick's report related to the trafficking of the images of these victims that are disaggregated from the losses to these victims caused by the underlying abuse they experienced.  See id. (citing Sealed Gov. Exs. 12-14); See Galan, 804 F.3d at 1289.

### III.  ORDER

For the reasons set forth above, the Court DENIES the Government's request for restitution on behalf of Vicky; DENIES the requests for restitution from Pia, Maya, and Ava; and GRANTS the Government's requests for restitution on behalf of Emily, Maureen, Angel, Nicole, and Ishin.

Defendant shall pay restitution to these five victims in the following amounts: $3000 to "Emily"; $2500 to "Maureen"; $4927 to "Angel"; $4927 to "Nicole"; and $4927 to "Ishin" for a total of $20,281, payment to begin immediately. Restitution is to be sent to the Clerk of the Court who shall forward it to the above identified victims.  Payment of restitution is due during imprisonment at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.  The interest is waived.

IT IS SO ORDERED.

Dated: October 3, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE