PHILLIP A. TALBERT
Acting United States Attorney
LYNN TRINKA ERNCE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-000227-JAM |
|---|---|
| Plaintiff, | **MOTION FOR TURNOVER OF FUNDS IN INMATE TRUST ACCOUNT AND TO ADJUST PAYMENT SCHEDULE PURSUANT TO 18 U.S.C.§ 3664(k)** |
| v. | |
| MICHAEL CAREY CLEMANS, | |
| Defendant and Judgment Debtor. | |

Since 2018, Michael Carey Clemans has received regular deposits from family members into his Bureau of Prisons ("BOP") inmate trust account totaling nearly $7,000.[1] Despite receiving all that money – which amounts to nearly a third of the $20,821.00 in victim restitution he owes – he has not yet paid anything to his young victims. As of July 12, 2021, Clemans held $1,312.51 in his accounts, $1,218.51 of which BOP has frozen at the United States' request pending the outcome of this motion.[2]

---

[1] The purpose of an inmate trust account, also referred to as an inmate commissary account, is to allow the BOP to maintain inmates' monies while they are incarcerated, including monies received by the inmate from prison employment and outside sources. *See* 28 C.F.R. §§ 506.1, 545.11. Family, friends, or other sources must deposit funds for the inmate's benefit into these accounts. *Id.*, § 506.2. Deposits intended for the inmate's account must be mailed directly to BOP's centralized commissary account. *Id.*, § 540.23.

[2] The BOP has administrative authority to restrain these funds but will not withdraw and transfer funds absent a court order. *See* BOP Program Statement 4500.12, Trust Fund/Deposit Fund Manual, at ¶ 10.1 (withdrawal requires inmate consent except for IRS and federal court orders); *id.* at ¶ 10.5.z ("Federal Court Orders requiring disbursement of funds from an inmate account must be followed. The court order serves as the source document for the withdrawal") https://www.bop.gov/policy/progstat/4500.12.pdf (last visited 7/11/2021).

The United States moves the Court pursuant to 18 U.S.C. § 3664(k) for an order directing the BOP to turn the $1,218.51 over to the Clerk of Court so that the funds can be paid to victim restitution, and adjusting his payment schedule to require that he pay at least $100 per month towards his restitution obligation based on a material change in his economic circumstances.

## I. BACKGROUND

On January 23, 2018, the Court sentenced Clemans to life in prison for conspiracy to travel with intent to engage in illicit sexual conduct; travel and attempted travel with intent to engage in illicit sexual conduct; conspiracy to produce child pornography; buying of children; attempted production and production of child pornography; and receipt of child pornography. ECF 115, 116. The Court ordered him to pay a statutory assessment of $600.00 and deferred its restitution determination. ECF 116 at 7. Prior to sentencing, Clemans reported that he had no income or assets. *See* PSR. On October 3, 2018, the Court ordered him to pay a total of $20,281.00 to five victims with payment to begin immediately and that payment of restitution is due during imprisonment at the rate of not less than $25 per quarter through the Bureau of Prisons Inmate Financial Responsibility Program (IFRP). *Id.*

To date, Clemans has paid $275 through the IFRP, all of which has been applied towards the $600 special assessment.[3] Declaration of Michelle Lecroy, ¶ 4. He still owes $325 of the special assessment and has paid nothing towards the $20,281.00 in restitution owed to his victims. *Id.*

Clemans is in federal custody at the United States Penitentiary in Tucson and has an inmate trust account and he also has accounts for his email and telephone usage.[4] Upon the United States' request to encumber funds in the account, the BOP froze $1,218.51 in the account. *Id.* ¶ 4. As of July 12, 2021, Clemans had a balance of $1,312.51, comprised of the frozen $1,218.51 in the inmate trust account, plus $94.00 in his telephone account. *Id.*, ¶ 5.

---

[3] The judgment requires that payments be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs. ECF 116 at 8.

[4] In addition to commissary accounts, inmates have accounts to pay for computer/email and telephone usage, and they can transfer money to and from those accounts. *See* BOP Program Statement 4500.12, Trust Fund/Deposit Fund Manual., at ¶ 6.5 (TRUFONE account) and ¶ 14.4 (TRULINC computer/email account) https://www.bop.gov/policy/progstat/4500.12.pdf (last visited 7/11/2021).

The United States has learned that, since May 2018, Clemans has received nearly-monthly deposits ranging from approximately $200 to $400 from family members, totaling $6,920.00. *Id.*, ¶ 6.

| Transaction Date | Transaction Type | Deposit Amount | Sender Name |
|---|---|---|---|
| 06/05/21 | Western Union | $200.00 | MCCORMACK, C (Sister) |
| 04/28/21 | Western Union | $200.00 | MCCORMACK, J (Other Family) |
| 03/24/21 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 02/17/21 | Western Union | $200.00 | MCCORMACK, J (Other Family) |
| 12/12/20 | Western Union | $300.00 | CLEMANS, R (Father) |
| 11/06/20 | Western Union | $300.00 | CLEMANS, M (Mother) |
| 10/12/20 | Western Union | $250.00 | CLEMANS, M (Mother) |
| 08/12/20 | Western Union | $300.00 | CLEMANS, M (Mother) |
| 06/30/20 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 05/25/20 | Western Union | $200.00 | CLEMANS, R (Father) |
| 05/21/20 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 02/27/20 | Western Union | $300.00 | CLEMANS, M (Mother) |
| 01/25/20 | Western Union | $400.00 | CLEMANS, M (Mother) |
| 01/03/20 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 12/10/19 | Western Union | $300.00 | CLEMANS, R (Father) |
| 12/03/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 11/01/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 10/03/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 09/10/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 07/26/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 06/22/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 05/18/19 | Western Union | $300.00 | CLEMANS, M (Mother) |
| 05/14/19 | Western Union | $300.00 | CLEMANS, R (Father) |
| 04/05/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 02/23/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 01/24/19 | Western Union | $200.00 | CLEMANS, M (Mother) |
| 11/06/18 | Western Union | $200.00 | STROEBEL, W (Other Family) |
| 09/04/18 | Western Union | $200.00 | CLEMANS, R (Father) |
| 06/22/18 | Western Union | $170.00 | CLEMANS, M (Mother) |
| 05/30/18 | Western Union | $200.00 | CLEMANS, R (Father) |
| | **Total** | **$6,920.00** | |

## II. ARGUMENT

The "primary and overarching goal of the [Mandatory Victims Restitution Act ("MVRA")] is to make victims of crime whole." *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004). Under the Crime Victims' Rights Act, victims are entitled to full and timely restitution as provided by law. 18 U.S.C. § 3771(a)(6). Yet, nearly three years after the Court ordered Clemans to pay restitution, his victims have not received a dime.

Title 18, United States Code, Section 3613, sets forth the procedures for the Government to enforce criminal monetary penalties, including restitution and criminal fines. 18 U.S.C. §§ 3613(a), (c), and (f). The statute provides that a sentence imposing restitution constitutes a lien in favor of the United States on all the defendant's real and personal property to the same extent as a federal tax lien. 18 U.S.C. § 3613(c). Thus, the United States' lien attaches to Clemans' interest in the funds held by the BOP in his inmate trust account. *See also* 18 U.S.C. § 3613(a) (government enforces restitution against all property and rights to property of the defendant); 18 U.S.C. § 3664(m) (government may use all available and reasonable means to collect restitution).

The MVRA requires that the defendant's resources received from any source during his term of incarceration must be applied to his outstanding restitution obligation. Specifically, 18 U.S.C. § 3664, which sets forth the procedures for the imposition and enforcement of restitution, provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n).[5] After the Court orders restitution, the Court can adjust its order and modify the payment plan in response to a defendant's changed economic circumstances. 18 U.S.C. § 3664(k).

Clemans' judgment and the MVRA require that he notify the Court and the United States Attorney of any material change in his economic circumstances that might affect his ability to pay restitution. ECF 115 at 1, ECF 116 at 2, 18 U.S.C. § 3664(k). The Court may also accept notification of a material change from the United States or from the victim. 18 U.S.C. § 3664(k). "Upon receipt of such notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id*. "This process permits courts to raise the binding payment floor in response to particular changes if they desire, while leaving room for the BOP to take full advantage of its institutional expertise and resources

---

[5] The United States is not moving for an order turning over the account funds as a substantial resource under 18 U.S.C. § 3664(n). In *United States v. Poff,* 781 Fed. Appx. 593 (9th Cir. 2019), the Ninth Circuit held that section 3664(n) "refers to windfalls or sudden financial injections . . . that become 'suddenly available' to the defendant" such as "inheritance, settlement or other judgment," which are "one-time, lump-sum payment[s]" as opposed to periodic payments like the ones Clemans has received since 2018. *Poff* at 594 (citing *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019)).

to create voluntary, flexible financial plans as evolving conditions dictate." *United States v. Lemoine,* 546 F.3d 1042, 1050 (9th Cir. 2019). Clemans has not notified the Court or the United States Attorney about his changed economic circumstances. By this motion, the United States is notifying the Court and Clemans' victims of his changed circumstances.[6]

The fact that Clemans has been consistently receiving deposits into his account since 2018 constitutes a material change in his economic circumstances because he now has a regular income, compared to before sentencing, when he reported having no assets or income. *See United States v. Grigsby*, 579 Fed. Appx. 680, 684 (10th Cir. 2014) (defining a material change in the defendant's economic circumstances as "a bona fide positive or negative change in the defendant's financial circumstances that affects his ability to pay restitution"); *Dye,* 48 Fed. Appx. at 220 ("A material change . . . is identified by an objective comparison of a defendant's financial condition before and after sentence is imposed") (citing *United States v. Grant,* 253 F.3d 95, 100 (2d Cir. 2000)); *see also United States v. Simpson-El,* 856 F.3d 1295, 1300 (10th Cir. 2017) (comparing defendant's economic circumstances before and after sentencing to determine if there was a material change); *United States v. Caudle,* 710 Fed. Appx. 124, 125-26 (4th Cir. 2018) (holding that district court properly denied inmate's motion to reduce monthly payments under 3664(k) where he did not meet his burden to show that his current financial condition was materially different from when the court imposed the restitution order).

The accumulation of funds in Clemans' trust account, resulting from the repeated account deposits from his family, constitutes a change in his economic circumstances warranting an adjustment of the payment schedule to include a lump sum payment of the $1,218.51 and monthly payments going forward. *See United States v. Armstrong,* 2020 WL 136289, at *8-9 (D.D.C. Jan 13, 2020) (finding that accumulation of regular deposits from family members constituted a material change in the defendant's economic circumstances under § 3664(k) and ordering lump sum restitution payment from BOP inmate

---

[6] Given the victims' locations overseas and complicated logistics, the United States has not given the victims prior notice of this motion. However, the United States intends to serve them with a copy of this motion as soon as practicable. *See United States v. Dye,* 48 Fed. Appx. 218, 220 (8th Cir. 2002) (United States satisfied notice requirement by notifying all victims before district court entered order on 3664(k) motion); *United States v. Lassiter*, No. 13-20476, 2021 WL 486611, at 3* (E.D. Mich. Feb. 10, 2021) (where "change in circumstances will result in the speedier payment of restitution owed to the victims, their rights are clearly not prejudiced, even if they did not receive notice").

trust account); *Lassiter*, 2021 WL 486611, at 2* (adjusting payment schedule under § 3664(k) to require a lump sum payment of the funds in prison trust account, less $100, to satisfy part of defendant's outstanding restitution obligation); *United States v. Hester*, No. 10cr2967 BTM, 2016 WL 1007335, at *3 (S.D. Cal. March 14, 2016) (modifying payment schedule under 3664(k) based on average monthly deposit amounts where defendant received monthly deposits into inmate trust account);.

Further, there are no exemptions from recovery applicable to the funds in Clemans' BOP account. Because the property is cash, it does not fall within any applicable categories of the exempt property that a defendant may claim in a criminal case. *See* 18 U.S.C. § 3613(a)(1) (setting forth the applicable IRS property exemptions for a criminal cases).[7] Accordingly, Defendant cannot claim that the funds held in his inmate trust account are exempt from payment of restitution. The United States is not aware of any other party who may claim an interest in this property.

Because the United States has a valid lien against all of Clemans' property, his funds currently held in the BOP account are subject to the United States' continuing interest in the satisfaction of his criminal judgment. 18 U.S.C. §3613 (a), (c), (f); 18 U.S.C. § 3664(m)(1)(A)(ii). Clemans is in prison for life, and his restitution obligation is likely to remain outstanding for many years as there are no other apparent assets available to satisfy restitution. Thus, the deposits he receives into his account are likely to be the only assets available to satisfy his outstanding restitution obligation and Clemans should be restrained from using them for his personal use.

///
///
///
///
///
///

---

[7] For criminal debts such as restitution, federal law provides that the only categories of exempt property are: (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a trade, business, or profession; (4) unemployment benefits; (5) undelivered mail; (6) annuity or pension payments under certain, specified federal statutes; (7) workers' compensation; (8) judgments for support of minor children; (9) certain service-connected disability payments; and (10) assistance under the Job Training Partnership Act. 18 U.S.C. § 3613(a)(1).

### III. CONCLUSION

Based upon the foregoing, the United States respectfully requests that this Court order the BOP to turn over $1,218.51 of the funds held in Clemans' inmate trust account to the Clerk of the Court to be applied to his special assessment and restitution obligations, and that the Court increase his monthly payment during incarceration to at least $100 per month until restitution has been paid in full.

PHILLIP A. TALBERT
Acting United States Attorney

Dated: July 22, 2021　　　　　By:　　 */s/ Lynn Trinka Ernce*
　　　　　　　　　　　　　　　　　LYNN TRINKA ERNCE
　　　　　　　　　　　　　　　　　Assistant United States Attorney